Paul G. **KEKICH,** Individually and on behalf of all other persons similarly situated, Plaintiff,

v.

**TRAVELERS INDEMNITY CO.,** Defendant.

Civ. A. No. 73-692.

United States District Court, W. D. Pennsylvania.

Aug. 14, 1974.

Joseph I. Lewis, Pittsburgh, Pa., for plaintiff.

John David Rhodes, John W. Jordan, IV, Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

This matter is here before me after briefs were filed and argument had on the plaintiff's motion for sanctions against the defendant for failure to fully answer written interrogatories. The hearing was held according to schedule; however, during the argument, the parties injected a discussion of a previous but still pending motion presented before another judge: a "Motion to Determine Applicability of Class Action Under Federal Rule of Civil Procedure 23(c)".

The action was instituted by the plaintiff, Paul G. Kekich, as a class action under a statute commonly known as the Federal Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. and was filed against The Travelers Indemnity Co. (Travelers). The plaintiff filed a series of interrogatories and subsequently a motion for sanctions because of the failure of the defendant to fully answer the written interrogatories. In passing, I mention the fact that a separate action, C.A. 73–539, had been filed by the plaintiff against Retail Credit Corporation, a credit reporting agency, and that that action has been dismissed separately by my opinion and decision filed on June 20, 1974.

The plaintiff in this action against Travelers alleges that on November 10, 1972, he applied to the defendant for automobile insurance; that the defendant ordered a consumer credit report from Retail Credit Corporation; that no notice of this order was given to the plaintiff within 3 days of the request by Travelers of Retail as required by 15 U.S.C. § 1681d;[1] that no copy of the report was made available by the defendant to the plaintiff as required by the FCRA; that as a result of the false, irrelevant and defamatory information

---

1. Disclosure of investigative consumer reports

(a) A person may not procure or cause to be prepared an investigative consumer report on any consumer unless—

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section; or

(2) the report is to be used for employment purposes for which the consumer has not specifically applied.

(b) Any person who procures or causes to be prepared an investigative consumer report on any consumer shall, upon written request made by the consumer within a reasonable period of time after the receipt by him of the disclosure required by subsection (a)(1) of this section, shall make a complete and accurate disclosure of the nature and scope of the investigation requested. This disclosure shall be made in a writing mailed, or otherwise delivered, to the consumer not later than five days after the date on which the request for such disclosure was received from the consumer or such report was first requested, whichever is the later.

(c) No person may be held liable for any violation of subsection (a) or (b) of this section if he shows by a preponderance of the evidence that at the time of the violation he maintained reasonable procedures to assure compliance with subsection (a) or (b) of this section.

contained in the report to the plaintiff, he was denied the automobile insurance for which he had made application to the defendant; that as a consequence the plaintiff is entitled to compensatory and punitive damages in the sum of $10,000 and injunctive relief against the defendant; and further, that similar relief including attorneys' fees should be allowed to the class represented by the plaintiff.

The argument before me related to 21 interrogatories filed by the plaintiff and the answers thereto as filed by the defendant on November 20, 1973. In the first interrogatory the plaintiff sought information on the number of applications for personal, family or household insurance made to the defendant and for which credit reports were requested. The defendant's answers gave information only for the Western District of Pennsylvania from the Pittsburgh Office during the period from April 25, 1971 to August 14, 1973 for automobile insurance only, while objecting to all other insurance information. Furthermore, the defendant responded that procurement of such information would have been unduly burdensome and expensive.

The second interrogatory requested information on the number of consumers (presumably applicants for insurance) during the period mentioned in the first interrogatory who were presented the necessary information under § 1681d. The defendant answered that all such consumer applicants received the required information on a form specially prepared for that purpose, and that notification was made before or at the time of delivery to the defendant of the policy or denial.

In Interrogatory 3, the plaintiff inquired as to the means of notification and the type of the form used within the 3 day period as required. The defendant answered that the forms were delivered to all applicants in various ways and included all the legally required information. The signatures of the applicants were procured on the forms as of the time of delivery.

Interrogatory 4 sought information on the number of applicants for insurance who were denied insurance because of the information procured, and how many insurance policies were written at increased rates. The defendant replied that such information was obtainable from various government agencies in accordance with insurance procedure, custom and requirements.

Interrogatory 5 inquired whether or not the defendant followed the procedure set forth in 15 U.S.C. § 1681m.[2] The answer of the defendant was that it did and explained the manner in which it was done.

Interrogatory 6 was more or less repetitious, except for the fact that it sought information on how the notice was delivered to the applicants. The answer incorporated, more or less, information contained in the answers to prior interrogatories.

Interrogatory 7 sought a list of the names and addresses of all persons denied personal, family or household insurance, within the prescribed period, or who were charged additional rates. The defendant objected to this interrogatory because it would be an expensive burden to undertake such an enormous task to procure information which would be ir-

2. Requirements on users of consumer reports —Adverse action based on reports of consumer reporting agencies.

(a) Whenever credit or insurance for personal, family or household purposes, or employment involving a consumer is denied or the charge for such credit or insurance is increased either wholly or partly because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

relevant, and further because the requirements of the Act were fulfilled.

The group of interrogatories 8 through 14 sought more or less identical information as was related to credit in another area of FCRA coverage. The answer of the defendant made objection to these because the plaintiff in this case had not applied for credit and therefore the information would be irrelevant.

In the group of interrogatories 15 through 21, the questions were more or less identical to those in the first seven interrogatories and related to employment as covered by the Act. The defendant answered that the plaintiff's complaint contained no allegation of employment and therefore these interrogatories were immaterial.

In the argument before me, the plaintiff's counsel insisted that the action here related to all matters of insurance for personal, family or household purposes, and not only to automobile insurance as allegedly applied for by the plaintiff from the defendant. The plaintiff attacked also a portion of the answers which indicated that certain applications were destroyed and were no longer in the possession of the defendant. The defendant justified this destruction of records by asserting its policy that when an application fails to achieve contractual materiality, the records have no value and for that reason are expended.

In this connection I observe that the plaintiff did not inquire into the method and character of record keeping, but rather broadened the potential burden of the defendant to such an extent that no matter what the method of record keeping, the question before me is whether or not the plaintiff would be entitled to receive the information to his interrogatories.

■ I raised a considerable number of questions in this regard and learned at the argument that Travelers is an all comprehensive insurance carrier, worldwide. The reply of the defendant on the territorial jurisdiction of the class action before me related to the claim of counsel for the plaintiff. When asked whether the class action would reach to Alaska and Hawaii, Joseph I. Lewis, the plaintiff's counsel replied (Tr. 7):

"Sir, I think this does."

Counsel was then asked by me (Tr. 8):

"What about American soldiers in the armed forces, in the European theater or the Eastern theater? Would that apply to them, too, or could you reach them?"

Counsel replied:

"I make no exclusion, if the person is included in the class, 'Consumer'."

When I asked if it included every person, except where one is outside the reach of the American Government, counsel replied (Tr. 8):

"Outside the reach of the Court's discretion."

The colloquy continued (Tr. 8):

"The Court: It would apply to the ambassador of another country, if this company insured that person for his automobile or for his life or casualty or anything else?

Mr. Joseph I. Lewis: Right."

A little later counsel for the plaintiff said (Tr. 11-12):

"The first question of law is the sole issue in the instant proceedings filed, applications for automobile insurance, and the argument which I have followed there indicates that the suits which have been filed here seek to enforce the provisions of a remedial act which are not limited to automobile insurance but are applicable to the personal insurance and the family purpose insurance and the household insurance—personal, family or household purposes.

.   .   .   .   .   .

.   .   .   my point here, Your Honor, is to say that we feel this Fair Credit

Act, being a remedial act, is applicable to all these types of insurance, that every person who writes a policy of insurance in connection with any of these stated purposes must comply with the Act."

In reply to this contention of the plaintiff, the defendant's counsel said, in part, (Tr. 17):

"Mr. Jordan: But the information he requests in the interrogatories—

.  .  .  is contained in those application files, and, at the present, there are about 2,500,000 of those spread all over the country in 147 different offices. To answer—to give exact numerical answers to the questions he asks would require Travelers personnel to take each one of those over 2,000,000 files, read them, extract the information he wants, and then compile an answer from it."

Counsel for the defendant continued later (Tr. 19):

"Well, Your Honor, our answer does limit the product area, as it were, to automobile insurance.

The Court: Throughout the entire world.

Mr. Jordan: Well, where Travelers does business, yes, sir; that would be included."

Mr. Jordan also stated (Tr. 19):

"Well, Your Honor, the point is, because these records are so spread out, and they are contained in individual files that would have to be read, the expense of answering these interrogatories would be in excess of a million dollars, and there is nothing that these interrogatories asks that would be relevant to the question of whether or not this case should proceed as a class action."

However, this did not indicate that counsel for the defendant admitted either the class action or its extent.

The defendant contended that it is "not in the business of extending credit .  .  . " (Tr. 20). Nor is it in the business of gathering information or credit reporting. In other words, it is not a credit reporting agency. The question immediately before me then is, has the defendant fulfilled its mission of answering the interrogatories as directed by the plaintiff, or whether there is any compulsion for advancing the broad information as sought by the plaintiff?

The complaint lends no information to the kind of business which the plaintiff pursues, only that he does business as Paul G. Kekich & Co. and that he personally resides at 1150 Bower Hill Apartments, Pittsburgh, Pennsylvania, 15234. Here we have a plaintiff who resides in the City of Pittsburgh and undertakes the highly ambitious project of being the representative of a purported group of disappointed applicants for "personal, family or household" insurance throughout the world where Travelers provides such protective insurance. Additionally, the plaintiff pursues the zealous project of representing "all individuals who are the subject of so-called 'credit or investigative consumer reports' ", which were procured or requested by the defendant of consumer reporting agencies and which were the subject-matter under the FCRA (Paragraph 5, page 1 of the Complaint).

Thus, I am called upon to undertake the supervision, administration and disposition of a vast realm of litigation. Accordingly, I must be governed by the law at the very incipiency of this proceeding in order to carry out the purpose of Congress in the FCRA and of the law as it is promulgated in Federal Rule of Civil Procedure 23.

Federal Rule of Civil Procedure 23 was enacted for the purpose of saving the courts, and enabling similar actions by similar persons for similar remedies to be administered and determined in simple, orderly and economical fashion. A number of courts have exhaustively

analyzed this rule and its implications. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732, (1974); Zahn v. International Paper Company, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Amalgamated Workers, Union of Virgin Islands v. Hess Oil, Virgin Islands Corporation, 478 F.2d 540 (C.A. 3, 1973).

■ Rule 23 is divided into five parts, a, b, c, d and e, but only a, b, and c are of concern to us here. Rule 23(a) lists four prerequisites for a valid class action. Even if they are all found to be present, the plaintiff must meet at least one of three elements listed in Rule 23(b).[3] The burden is upon the plaintiff to establish satisfaction of the various requirements. Davis v. Romney, 490 F.2d 1360, 1366 (C.A. 3, 1974); Daye v. Commonwealth of Pennsylvania, 344 F.Supp. 1337, 1342 (D.C.Pa.1972).

■ In his motion to determine applicability of class action, the plaintiff alleges that in accordance with Rule 23(a)(2), there are common questions of fact[4] and law.[5] A review of the record and pleadings in this matter, however, does not substantiate this contention. In the first place, the defendant has not admitted that its uniform notification procedures entail the type of treatment

---

3. Rule 23 Class Actions
    (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
    (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
    (1) the prosecution of separate actions by or against individual members of the class would create a risk of
    (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
    (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
    (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
    (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

4. Questions of fact:
    (a) Whether Defendant, The Travelers Indemnity Co., requested a credit investigative report of each Plaintiff in the class.
    (b) Whether defendant, The Travelers Indemnity Co. notified each member of the class within three (3) days of the credit investigation report being ordered.
    (c) Whether defendant, The Travelers Indemnity Co., notified each member of the class that the report would include information as to his general reputation, personal characteristics and mode of living.
    (d) Whether the member on the basis of such report was refused either credit or insurance.
    (e) Whether the member was given the opportunity to challenge, correct or amend the report.

5. Common questions of law predominate:
    (a) Whether the defendant violated the Fair Credit Reporting Act.
    (b) Whether appropriate injunctive and declaratory judgment relief are required to protect the class and ensure compliance with the law.

of which the plaintiff complains but, on the contrary, alleges the treatment was in all respect in accordance with the dictates of the FCRA.[6] Thus I cannot state that the facts of each applicant's case would be substantially similar. Rather, Travelers would have the right to oppose the inclusion of each individual applicant concerning whether notice was actually sent and received by that party in accordance with the statute. Each member of the class would have a separate set of facts upon which liability should be determined. For instance, the applicant for health or disability insurance would relate to medical information, while one for a surety bond would relate to character information. Each connotes different circumstances. To ignore this factor would be to deprive the defendant or potential plaintiffs of their rights to their day in court. The convenience and efficiency of the class action does not, in this instance, justify the wholesale abandonment of individual legal protections which could result.

In regard to the proposed common questions of law there, in reality, appear to be none. The defendant Travelers does not deny that it is bound to perform the duties provided in 15 U.S.C. §§ 1681d and 1681m. Rather it relies upon the argument that it set up uniform procedures to comply therewith and that these procedures were followed in regard to the plaintiff and all the other applicants.

Even if, assuming *arguendo*, the plaintiff had shown that Rule 23(a)(2) has been complied with, it is doubtful whether he could satisfy any of the Rule 23(b) conditions. Rule 23(b)(1)(A) is not applicable to an action for money liability. Alpert v. U.S. Industries, Inc., 59 F.R.D. 491 (D.C.Cal. 1973); Rodriguez v. Family Publications Service, 57 F.R.D. 189 (D.C.Cal. 1972); Goldman v. First National Bank of Chicago, 56 F.R.D. 587 (D.C.Ill.1972).

Insofar as the plaintiff requests injunctive relief, a Rule 23(b)(3)(A) action might in other circumstances be possible. However, for reasons herein explained, the equitable remedies sought by the plaintiff on behalf of himself and the alleged class, are not matters of substance in the instant case, and therefore, this section could not be the basis for a class action. Rule 23(b)(1)(B), supra, is intended primarily to facilitate situations where class members have interests in a common organization, fund or contract. Alpert v. United States Industries, Inc., *supra*; Rodriguez v. Family Publications Service, Inc., *supra*; Goldman v. First National Bank of Chicago, *supra*; Advisory Committee's Note to 23(b)(1)(B), 39 F.R.D. 98, 100–102.

In the case at bar there is no such common connective link. Each insurance applicant has his own correlative factual situation. Furthermore, the argument that the plaintiff's individual case may at some subsequent time provide a basis for *stare decisis* is not a legitimate consideration for a 23(b)(1)(B) action. Goldman v. First National Bank of Chicago, *supra*.

Rule 23(b)(2) delineates the possibility of a class action where injunctive or declarative relief is sought. Although I am aware that the plaintiff has in part requested such action, I also must recognize the fact that the relationship of the parties and the Act itself renders this question inapplicable as a basis for a class action. The nature of the violation alleged shows it to be a non-continuous type action. The harm complained of by the plaintiff has been completed and there is no allegation or demonstration that such has continued either with regard to the plaintiff or other potential class members. There appears to be no continuing harm such as would be uncompensated in an ordinary damage action.

6. Affidavit of Richard II, Page, dated February 15, 1974, and filed February 22, 1974.

Congress in its legislative discretion has wisely appointed the Federal Trade Commission (FTC) as the administrative enforcement agency with regard to matters coming under the FCRA (15 U.S.C. § 1681s).[7] Although it did also provide authority for individual suit by a consumer, 15 U.S.C. 1681n and 1681o)[8], that authority does not provide for equitable relief such as the plaintiff in the instant matter has requested in part.

Given the fact that the FTC has the express power to enforce compliance, if indeed the defendant has been systematically violating the Act, there appears to be no reason for a private attorney general, an office which the plaintiff seems to have assumed.

Rule 23(b)(3) is also an inappropriate basis for class action in this case. In addition to the factor previously noted, i. e., that each potential class member would have his own particular set of facts, the inconvenience of a single forum and the importance of each potential plaintiff controlling his own litigation overcomes any opposing arguments. Given the size and nationwide scope of the potential class, innumerable problems of administration and procedure could result. Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76 (D.C.Pa. 1970). In addition, if each, or even a substantial number of class members claims are valued at $10,000, as is the plaintiff's, they would certainly retain a paramount interest in litigation of their particular case.

7. § 1681s. Administrative enforcement—Federal Trade Commission; powers.

(a) Compliance with the requirements imposed under this subchapter shall be enforced under the Federal Trade Commission Act by the Federal Trade Commission with respect to consumer reporting agencies and all other persons subject thereto, except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to some other government agency under subsection (b) hereof. For the purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act, a violation of any requirement or prohibition imposed under this subchapter shall constitute an unfair or deceptive act or practice in commerce in violation of section 45(a) of this title and shall be subject to enforcement by the Federal Trade Commission under section 45(b) of this title with respect to any consumer reporting agency or person subject to enforcement by the Federal Trade Commission pursuant to this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act. The Federal Trade Commission shall have such procedural, investigative, and enforcement powers, including the power to issue procedural rules in enforcing compliance with the requirements imposed under this subchapter and to require the filing of reports, the production of documents, and the appearance of witnesses as though the applicable terms and conditions of the Federal Trade Commission Act were part of this subchapter. Any person violating any of the provisions of this subchapter shall be subject to the penalties and entitled to the privileges and immunities provided in the Federal Trade Commission Act as though the applicable terms and provisions thereof were part of this subchapter.

8. § 1681n. Civil Liability for willful noncompliance

Any consumer reporting agency or use of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

§ 1681o. Civil liability for negligent noncompliance. Any consumer reporting agency or use of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—(1) any actual damages sustained by the consumer as a result of the failure; (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

As I said before, the framers of Federal Rule of Civil Procedure 23 had a highly credible purpose for providing mass litigation and for saving the energies and time of litigants, lawyers and the courts. They had the additional credible purpose of lending legal aid to the lowly or impecunious litigant who ought to have aid equal to those with more satisfactory finances. Certainly those would-be litigants who may suffer from fraudulent dealings and those who perhaps within the law still perpetrate unfair dealings upon individuals and still others like hounds of everyday life who prey upon the innocent or ignorant believers that all people are honest. The class action serves a worthy and valuable purpose; yet the class action can also become a weapon of unfairness and harassment, such as would bludgeon even innocent businessmen into surrender to the force of mass litigation by even a single person who claims mass action rights and representation. Thus Rule 23 can be an enormous power in the hands of one or more individuals. The Supreme Court gave some indication of this in *Eisen, supra,* and referred in more than one place to the fact that the plaintiff in interest who brought the class action was an individual whose "stake in the damage award he seeks is only $70." *Eisen, supra,* 417 U.S. 156, at page 161, 94 S.Ct. 2140, at page 2144.

The present complaint is devoid of any facts upon which a claim to the extent of $10,000 is sought by the plaintiff. The complaint merely seeks for compensatory and punitive damages. Furthermore, the complaint recites no allegations upon which there can be any basis that the defendant failed to give notice to any other person as it allegedly did with the plaintiff. The defendant has filed an affidavit alleging its policies with regard to notification in accordance with the requirements of FCRA, but the plaintiff did not file any counter affidavit on the point.

The plaintiff has not averred that other applicants were known to him in or about the neighborhood who were treated the same as was the plaintiff. If the plaintiff had come before me with interrogatories to Travelers inquiring in regard to these area business matters in order to establish a foundational jurisdiction, it might have lent some worthiness of belief, but making a claim of such momentous and gigantic proportion which virtually covers the entire earth lends no persuasion that the plaintiff is entitled to carry the burden of Atlas in behalf of all applicants who have been dealt with tortiously by the defendant. While this might be a highly ambitious endeavor, it is nevertheless a project of such immensity as ought to have some believable element of solid supports and not be permitted access to the courts, as an excursionary tactic capable of excessively straining the efforts and time of the judicial system, while at the same time overloading litigants with worthless burdens.

Rule 23 was intended to and should carry the burden of a class action whenever and wherever equity demands. If the defendant was selling fraudulent insurance or was perpetrating fraud generally upon insurance applicants, it would be a worthy task for one or more such applicants to utilize Rule 23 for the benefit of those being injured and to bring about a legal remedy and justice. The instant case is not such a one but is rather an action for damages for a claim based upon neglect of a statutory direction which may have resulted tortiously in money damages.

In *Eisen, supra,* the Supreme Court reviewed the essentials of Rule 23 treated by prior courts. In dealing with a Rule 23(b)(3) class action, the Court ruled specifically that the representative plaintiff in such an action should bear the costs of individual notice to the class, and that individual notice was the best practicable notice under Rule 23(c)(2). In arriving at this conclu-

sion, however, the Court necessarily had to rule on several other aspects of such a suit. Thus, in part, it held that Rule 23 does not give a court "any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen, supra,* 417 U.S. at pages 157–158, 94 S.Ct. at page 2143. On the contrary, Judge Wisdom's logic in Miller v. Mackey International, 452 F.2d 424, 427, C.A. 5, 1971, is cited:

> "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."

In holding that individual notice was the only proper means of notification in a Rule 23(b)(3) action, the *Eisen* opinion stated that due process required more than publication where the names and addresses of potential class members could be readily obtained. Although noting petitioner's arguments that the number of potential class members was so numerous (2,500,000 possible members) as to make the cost of individual notice prohibitively high, and that the stakes of each class member were not large enough to justify separate litigation, the Court concluded that the notice requirements of Rule 23(c)(2) are explicit in their direction, and that the best notice possible in such a situation is individual in nature. *Eisen, supra,* 417 U.S. 156, at page 173, 94 S.Ct. 2140.

Under the circumstances, since the requirements of Rule 23 have not been met in this action, the allowance of a class action within the plaintiff's defi-

nition is not permissible. That leaves the action remaining of the individual, Paul G. Kekich, against Travelers Indemnity Co. under the provisions of FCRA, 15 U.S.C. § 1681p [9], and the plaintiff is free to proceed in accordance with the authority contained therein. This is so in spite of the fact that the plaintiff has not averred that his damages exceed the sum of $10,000.

Accordingly, the plaintiff's motion for sanctions against the defendant will be denied because the circumstances set forth and the remedies sought here have no applicability to a class action under Federal Rule of Civil Procedure 23. The plaintiff as an individual is, however, entitled to proceed against the defendant under the provisions of FCRA, 15 U.S.C. § 1681p.

---

9. § 1681p. Jurisdiction of courts; limitation of actions.

An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises, except that where

a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.