William H. PENDLETON and
Franne Nelson et al.

v.

TRANS UNION SYSTEMS CORP. t/a
Philadelphia Credit Bureau, and t/a
Credit Information Corporation of Philadelphia and the Federal Trade Commission.

Civ. A. No. 76–1298.

United States District Court,
E. D. Pennsylvania.

Sept. 7, 1977.

Wilbur Greenberg, Gary Green, Sidkoff, Pincus & Greenberg, Philadelphia, Pa., for plaintiffs.

Harvey Bartle, III, Deckert, Price & Rhoads, Robert N. DeLuca, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This action was brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* The plaintiffs have alleged that they were denied credit in consumer transactions as a result of errors contained in credit reports distributed by the defendant, Credit Bureau, in violation of the FCRA. In addition to their own individual claims, the plaintiffs have sued on behalf of a class, and have requested that the Court certify a class defined as follows:

> "(a) all persons found in the geographic area served by defendant Credit Bureau who have been denied credit in the years 1975 and 1976, and who might be denied credit in the future, as a result of a consumer credit report issued by said defendant, and/or
>
> (b) all persons found in the geographic area served by defendant Credit Bureau who have been denied credit in the years 1975 and 1976, and who might be denied credit in the future, as a result of said defendant's violation of the Act."

Because the prerequisites for class certification set forth in Rule 23 of the Federal Rules of Civil Procedure have not been satisfied, plaintiffs' Motion for Class Certification will be denied.

The Credit Bureau's operations are described in great detail in plaintiffs' massive brief in support of their motion for class certification, and only a short explanation is necessary here. The Credit Bureau issues credit reports on consumers to banks and other businesses interested in extending credit to the consumers. The Credit Bureau obtains factual information about consumers from the institutions extending credit ("subscribers"), and from public records and other consumer credit reporting agencies. Defendant currently maintains approximately 14 million consumer files, and has 3,500 subscribers who pay for credit reports. Its subscribers are located in Southeastern Pennsylvania, and parts of

Delaware and New Jersey. The Credit Bureau assembles and stores its information by computer, and it therefore is able to provide credit reports almost immediately when requested by a subscriber.

■ The FCRA establishes numerous requirements which consumer credit reporting agencies must follow in reporting adverse information, responding to consumer inquiries, and resolving disputes over particular entries in a report. The Act also limits the purposes for which a consumer credit report may be used. In addition, the FCRA permits consumers to recover damages whenever a consumer credit reporting agency negligently fails to comply with the Act:

> "Any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1) any actual damages sustained by the consumer as a result of the failure;
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681o.

In cases of *willful* noncompliance, punitive damages may be recovered, in addition to actual damages and attorney's fees.

In this action, plaintiffs seek injunctive relief as well as damages and attorney's fees. Plaintiffs have focused on a provision of the FCRA which requires agencies to follow reasonable procedures to assure the accuracy of credit reports:

> "Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

Plaintiffs contend that the Credit Bureau is not following reasonable procedures to assure accuracy in its reports. The factual basis for this contention is set forth in plaintiffs' brief. Some of the alleged violations include failing to require adequate identification of consumers from subscribers providing information, the lack of any procedures for checking the accuracy of information, the lack of adequate procedures for removing outdated information from reports, and inadequate procedures for correcting disputed items and notifying subscribers of corrections. Plaintiffs' individual claims illustrate some of these alleged violations. Pendleton alleges that he was denied credit because of a credit report which mistakenly included entries belonging to a different William H. Pendleton. In addition, Pendleton had difficulty getting his report corrected. Plaintiff Nelson claims that she was denied credit because a credit report contained outdated or incorrect information.

■ The plaintiffs herein have proposed various options for class certification under Rule 23 of the Federal Rules of Civil Procedure. For example, a (b)(2) class could be certified for all issues, or for injunctive relief only, or a class could be certified pursuant to Rule 23(b)(3). No matter what option is chosen, however, the plaintiffs must satisfy the provisions of Rule 23(a), and at least one subsection under Rule 23(b). I have little difficulty concluding that either of the proposed classes are "so numerous that joinder of all members is impracticable." F.R.C.P. 23(a)(1). Similarly, the claims of the named plaintiffs appear to be typical of the claims of members of the class, and I am confident that plaintiffs and their counsel would fairly and adequately protect the interests of the absent class members. F.R.C.P. 23(a)(3), 23(a)(4).

■ Defendant argues strenuously, however, that the plaintiff has failed to establish the existence of questions of fact or law common to the class. This argument is persuasive. As the defendant points out, several individual issues must be resolved in order to prove the defendant's liability to class members. First of all, liability requires proof that there was an error in the

individual's credit report. There can be no liability for denials of credit caused by accurate reports. See *Middlebrooks v. Retail Credit Co.*, 416 F.Supp. 1013 (N.D.Ga.1976). Secondly, the defendant cannot be liable unless the consumer can show that he was harmed by the defendant's negligent action. Thus, a consumer who was denied credit must show that the denial was caused by inaccurate entries (which in turn were caused by the defendant's failure to use reasonable procedures), rather than by correct adverse entries or any other factors.

It is important to emphasize that these individual factual determinations enter into proving the defendant's liability, not simply the amount of an individual's damages. While the necessity of individually determining the *amount* of a class member's damages normally will not prevent certification of a class, classes rarely are certified if the *fact of damage* is a difficult individual issue. Plaintiffs' reliance on *In re Master Key Antitrust Litigation*, 70 F.R.D. 23 (D.Conn.1975), for the contrary proposition is misplaced. In that case, the court found that the fact of injury was a common question:

> "If the plaintiffs introduce proof (or if it may be stipulated) at the liability stage that they bought master key systems and that the defendants engaged in a pervasive nationwide course of action that had the effect of stabilizing prices at supracompetitive levels, the jury may conclude that the defendants' conduct caused injury to each plaintiff. The amount of that injury may be computed at a separate trial on the damage issues." 70 F.R.D. at 26 n. 3.

Unlike *Master Key*, the factfinder in the present case cannot possibly conclude that each class member was injured by the defendant without resolving the individual issues identified above.

In response to the defendant's contention that liability depends almost entirely on individual issues, the plaintiffs argue that issues relating to injunctive relief are common to all members of the class. Plaintiffs also contend that the reasonableness of the defendant's procedures is an issue common to the class. While some of these issues probably are common to many members of the proposed classes, the plaintiffs have not established that any issue is common to all members of either proposed class. The reasonableness of a procedure is only material to those persons who were affected by that procedure, or who are likely to be affected by it in the future. Similarly, injunctive relief to correct a particular procedure is only appropriate relief for those persons who are realistically threatened with harm from the improper practice. Again, this would not include all the members of plaintiffs' proposed classes.

This case is distinguishable from the case of *Biechele v. Norfolk & Western Railway Co.*, 309 F.Supp. 354 (N.D.Ohio 1969), relied upon by the plaintiffs. The plaintiffs in *Biechele* claimed that pollution from defendant's facilities was a nuisance and could be enjoined. A plaintiff class was certified, consisting of all persons residing within a carefully delineated geographic area. These geographic limitations defined the class in such a way that the Court could conclude that all of the plaintiffs were injured in various respects and to various extents by the defendant's operations. 309 F.Supp. at 357. Plaintiffs proposed classes in this case have no comparable restrictions enabling the Court to conclude that all class members are affected by a particular practice. Consequently, the plaintiffs have not established that there are questions of fact or law common to the class.

Although I am convinced that the plaintiffs have failed to satisfy Rule 23(a)(2), my refusal to certify a class need not rest entirely on this ground. Plaintiffs' proposed classes also fail to meet the requirements of Rule 23(b). Plaintiffs argue that a class should be certified under subsection (b)(2), at least for the purpose of awarding injunctive relief. That subsection provides as follows:

> "An action may be maintained as a class action if  .   .   .
>
> > (2) the party opposing the class has acted or refused to act on grounds gen-

erally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The Third Circuit Court of Appeals recently has interpreted this provision in the case of *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.) *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The Court noted that "[b]y its very nature, a (b)(2) class must be cohesive as to those claims tried in the class action." 508 F.2d at 248. "The very nature of a (b)(2) class is that it is homogeneous without any conflicting interests between the members of the class." 508 F.2d at 256.

Because a (b)(2) class must be homogeneous and cohesive, a class can be certified under subsection (b)(2) only where the defendant has acted in the same way toward all members of the class, or has acted on grounds applicable to all members of the class. The classes proposed in this case do not meet these requirements of subsection (b)(2). The defendant has not acted on grounds generally applicable to the class, since the challenged practices are not based on a common characteristic or status of the class members, nor has the defendant adopted a particular practice which similarly affects all class members. Rather, the various practices challenged by the plaintiffs have varying impacts on the individual class members. Most of the challenged practices have no effect whatsoever on the many individuals who never have a problem with a credit report and are not denied credit because of an inaccurate report. Other practices are applicable only to portions of the proposed classes. For example, the defendant's alleged failure to require adequate identification of consumers is not a practice which similarly affects all consumers, since the amount and type of identifying information used by the defendant varies from case to case.

Perhaps the inappropriateness of a (b)(2) certification can best be illustrated by observing the marked differences between this case and the cases cited by the plaintiffs in which (b)(2) classes were certified.

Plaintiffs have analogized this case to a Title VII action, and have cited several discrimination cases in support of their Motion to Certify. See, e. g., *Paddison v. Fidelity Bank*, 60 F.R.D. 695 (E.D.Pa.1973). However, plaintiffs' analogy is inappropriate, and cases involving discrimination are easily distinguished. In a Title VII or other discrimination case, all members of the plaintiff class share the characteristic that allegedly is the basis of the discrimination. If the defendant has discriminated, then he has acted on grounds generally applicable to the class, and a (b)(2) class is proper. In the case at bar, however, the defendant's actions have not been based on any characteristic common to the class members. Instead, the defendant has adopted various procedures which are not motivated by the status of the plaintiff class, and which affect the members of the proposed classes in different ways. Unlike a Title VII case, there is no common question concerning the existence of discrimination which unites all members of the class.

Plaintiffs also have cited other types of cases in which (b)(2) classes were certified. In *Greenway v. Information Dynamics, Inc.*, 399 F.Supp. 1092 (D.Ariz.1974), *aff'd*, 524 F.2d 1145 (9th Cir. 1975), plaintiffs claimed that the defendant's practice of distributing to subscribers a list of persons whose checks had been returned by their banks without payment violated the Fair Credit Reporting Act. A class was certified consisting of all persons whose names appeared on the lists collected and disseminated by the defendant. Obviously, all the class members in *Greenway* were being treated in the same way by the defendant, and if the defendant's practice of distributing such lists was illegal, all class members would be entitled to relief.

In *Rhodes v. Weinberger*, 388 F.Supp. 437 (E.D.Pa.1975), this Court certified a (b)(2) class consisting of all persons who have been, are being, or will be denied child's insurance benefits solely because of 42 U.S.C. § 416(h)(3)(A). Again, it is quite clear that under this definition all class members are affected in the same way by

the challenged statute, and that all class members are entitled to relief if the statute is unconstitutional. This Court certified a similarly narrow and discrete class in *Manning v. Princeton Consumer Discount Co.*, 390 F.Supp. 320 (E.D.Pa.1975). The class in *Manning* was made up of all persons who have been, are being, or will be denied the disclosures required under Section 128 of the Truth-in-Lending Act by having their credit purchases treated as separate sale and loan transactions. By definition, all class members are treated the same by the defendant, and all are entitled to relief if the defendant's practice is illegal. The same reasoning applies to *Stavrides v. Mellon Bank*, 69 F.R.D. 424 (W.D.Pa.1975), in which all class members deposited funds in escrow accounts on which the defendants refused to pay interest, allegedly in violation of the antitrust laws.

In all of the cases cited above, and in several others upon which plaintiffs rely, (b)(2) classes were certified because the defendant acted on the basis of a characteristic common to all class members, or the defendant's actions affected all class members in the same way. The classes were cohesive and homogeneous, in that all class members would be entitled to relief if the challenged practice was unlawful. The large, amorphous classes proposed in this case are not cohesive and homogeneous, and consequently, cannot be certified under subsection (b)(2).

Possibly because plaintiffs recognized the difficulty of proceeding under (b)(2), they also have argued that a class can be certified under subsection (b)(3). This provision generally must be employed when money damages is the primary type of relief sought by the members of the class, or when a class seeking injunctive relief cannot satisfy the prerequisites of subsection (b)(2). Since classes certified under this provision tend to be less cohesive than classes certified under other parts of Rule 23(b), the Rule specifies several factors which must be considered before a (b)(3) class is certified, and requires that notice be sent to each member of the class giving him the opportunity to withdraw from the action. The classes proposed in this case utterly fail to meet the requirements of subsection (b)(3).

The first requirement for a (b)(3) class action is that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. As I noted in my previous discussion of the common questions issue, this case involves a great many individual issues. These include determination of the accuracy of an individual's credit report, whether an inaccuracy was caused by the defendant's negligent procedures, whether the individual was harmed by the inaccuracy in the report, and the amount of any such harm. It is impossible to conclude that there are common questions of law or fact which predominate over these individual issues.

Rule 23(b)(3) also requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy, and the Rule lists several factors pertinent to this question:

"(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Applying these factors to the present case, I find that a class action would not be superior to other methods of adjudicating the controversy, namely, individual actions.

Because the factual basis for each individual consumer's claim will be different, an individual class member does have an interest in controlling his own action. Nearly all of the defendant's activities are challenged in this case, and any one of the defendant's procedures may have been responsible for a particular consumer's injury. Thus, each consumer's claim will depend on proof that the particular procedure that

harmed him was unreasonable and violated the FCRA. Although the representative plaintiffs undoubtedly would attack many of the defendant's procedures, an individual class member cannot be assured that his particular claim would be presented adequately unless he himself prosecuted the action. In fact, plaintiffs themselves have cited several individual FCRA actions in this District against the same defendant. See *Devlin v. Credit Information Corp. of Philadelphia*, C.A. No. 76–2718 (E.D.Pa.); *Rosenberg v. Philadelphia Credit Bureau*, C.A. No. 75–1548 (E.D.Pa.). The existence of these cases demonstrates the interest of individual class members in bringing separate actions. Moreover, it should be pointed out that despite the fact that the damages recoverable even in successful FCRA cases are likely to be small, individual actions are viable because the Act provides for the recovery of counsel fees by successful plaintiffs. 15 U.S.C. §§ 1681n, 1681*o*.

Most importantly, a (b)(3) class action in this case would be absolutely unmanageable. The defendant compiles credit reports on millions of consumers. Simply sending the required notice to the class therefore appears to be an overwhelming problem. Even if that is accomplished, trial would require resolution of numerous factual and legal issues relating to all facets of the defendant's operations and thousands of individual consumer reports. If the plaintiffs were to prevail, computing each individual class member's damages would be an endless task.

The inappropriateness of class certification is reinforced by comparing this case to a Truth-in-Lending Act case in which a class *was* certified. In *Agostine v. Sidcon Corporation*, 69 F.R.D. 437 (E.D.Pa.1975), Judge Bechtle found that a class action was the superior way to proceed, based on the "modest size of the class, the relative ease by which the class may be ascertained, the lack of interest of members of the class in individually controlling separate actions, and the possibility of vindicating numerous small claims which otherwise might never be adjudicated." 69 F.R.D. at 448. In con-

trast to *Agostine*, the proposed classes in this case are extremely large, the members of the class cannot be easily ascertained, and individual class members have demonstrated an interest in controlling separate actions. For all of these reasons, I conclude that a class action is not superior to individual actions as a means of adjudicating the controversy. Since none of the requirements of Rule 23(b)(3) are satisfied, certification under that provision must be denied.

My decision to deny certification in this case necessarily involves the exercise of some discretion. A district court must be able to avoid creation of a large and unwieldy class, where such a class is not necessary to protect the plaintiffs' rights. See *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336 (10th Cir. 1973). Here, creation of a class is not necessary because individual consumers can bring and have brought separate actions under the FCRA, and successful consumers can recover counsel fees. In fact, the Act itself seems to contemplate enforcement by the Federal Trade Commission and through individual negligence actions. This may be why the plaintiffs have been unable to cite any similar case in which a class was certified. In the case most closely on point, class certification was denied. See *Kekich v. Travelers Indemnity Co.*, 64 F.R.D. 660 (W.D.Pa.1974). I see no reason to depart from this precedent in the case at bar. Plaintiffs have not met the prerequisites of Rule 23, and their Motion for Class Action Certification will be denied.