Leslie A. LEARN

v.

**CREDIT BUREAU OF LANCASTER COUNTY, INC.**

Civ. A. No. 85–7448.

United States District Court, E.D. Pennsylvania.

June 1, 1987.

Daniel H. Shertzer, Lancaster, Pa., for plaintiff.

Christopher S. Underhill, Lancaster, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The plaintiff instituted this action claiming that the defendant had violated various provisions of the Fair Credit Reporting Act, 15 U.S.C.A. § 1681–1681t (West 1982 and Supp.1987). Presently before us are the parties' cross-motions for summary judgment.

The plaintiff alleges in his amended complaint that the defendant credit reporting agency violated §§ 607 and 611(a), 15 U.S.C.A. §§ 1681e and 1681i(a), by, respectively, (1) failing to maintain reasonable procedures to avoid violations of § 605, 15 U.S.C.A. § 1681c, and to assure maximum possible accuracy of the information contained in the consumer credit reports it issued regarding the plaintiff and (2) failing to reinvestigate the accuracy of its reports.[1] The facts averred to serve as the basis of these allegations are as follows: On October 20, 1978, the plaintiff, then in a bankruptcy proceeding in this District, was released by order of the bankruptcy court from all dischargeable debts. Among those debts discharged was the sum of $858.87 owed by the plaintiff to CoreStates Bank of Delaware, N.A., then trading as the Philadelphia National Bank. On April 28, 1985, the plaintiff appeared in person at the defendant's place of business with a copy of the order discharging the debt to CoreStates Bank and requested that any entries on his credit report be corrected. Some time thereafter, but prior to August 7, 1985, the plaintiff sought to open a credit account with the J.C. Penney Co., Inc. On August 6, 1985, the J.C. Penney Co. obtained a consumer credit report regarding the plaintiff from the defendant. On August 7, 1985, the J.C. Penney Co. denied the plaintiff consumer credit on the basis of adverse information contained in said consumer report. On August 14, 1985, the plaintiff obtained a copy of the report that the defendant had provided to J.C. Penney. The plaintiff asserts that the report was inaccurate because it contained an entry that the plaintiff had a balance past due and owing to CoreStates Bank in the amount of $858.00.

On March 11, May 5, and May 8, 1986, the defendant issued four other credit reports to prospective creditors of the plaintiff. The plaintiff, with respect to these reports, claims that since CoreStates Bank charged this debt off to profit and loss in October, 1978, the information as to the CoreStates account as disclosed by the defendant in reports disseminated after October 20, 1985, was "stale" since it antedated the report by more than seven years and, thus, was improperly reported by the defendant in contravention of § 605(a)(4) of the Act.[2]

The defendant does not, for the most part, dispute the plaintiff's factual allegations. It strenuously disputes, however, that it in any way violated the Fair Credit Reporting Act. It is the defendant's position that the reports it disseminated were completely accurate and contained no obsolete information.

The enforcement provisions of the Act are contained in §§ 616 and 617, 15 U.S.C.A. §§ 1681n and 1681o, respectively. Section 616 provides the consumer with a

1. The plaintiff in his amended complaint did not specifically refer to § 607(a) of the Act, 15 U.S.C.A. § 1681e(a); rather, he cited only § 607(b), 15 U.S.C.A. § 1681e(b). We believe it is clear, however, that the plaintiff also states a cause of action under § 607(a) since he claims that certain of the consumer credit reports issued by the defendant contained "stale" information in contravention of § 605 of the Act.

2. The plaintiff did not attach to his amended complaint a copy of the consumer credit report he obtained from the defendant on August 14, 1985, as he had done with his original complaint. We have simply treated the report attached to the original complaint as though it were incorporated into the plaintiff's amended complaint. We have also relied upon the consumer report the plaintiff obtained from the defendant on May 8, 1986, which was attached to the defendant's reply brief to the plaintiff's summary judgment motion. Doc. # 15.

cause of action for a consumer reporting agency's willful failure to comply with any requirement of the Act. Under § 616, the consumer may recover actual and punitive damages, as well as costs and attorney's fees. Section 617 provides the consumer with a cause of action for a consumer reporting agency's negligent failure to comply with any requirement of the Act. Under § 617, the consumer may recover actual damages, costs and attorney's fees.

 The Fair Credit Reporting Act does not impose strict liability upon consumer reporting agencies. The mere fact that a report disseminated by a credit reporting agency contains inaccurate and/or stale information does not provide the consumer with a cause of action; rather, it is the agency's failure to maintain and follow "reasonable procedures" to avoid violations of, for example, § 605(a)(4) and/or to assure the maximum possible accuracy of the information contained in the report which gives rise to liability. 15 U.S.C.A. § 1681e. Thus, it is entirely possible that a trier of fact could find that while a report contained inaccurate and/or stale information, the reporting agency followed "reasonable procedures" and, thus, is not liable. *See, e.g., Bryant v. TRW, Inc.,* 689 F.2d 72 (6th Cir.1982); *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47 (D.C.Cir.1984); *Thompson v. San Antonio Retail Merchants Association,* 682 F.2d 509 (5th Cir.1982); *Hauser v. Equifax, Inc.,* 602 F.2d 811 (8th Cir. 1979), and *Pendleton v. Trans Union Systems Corp.,* 76 F.R.D. 192 (E.D.Pa.1977).

In the instant action, the plaintiff has asserted a number of discrete causes of action. Each shall be discussed *seriatim.*

### 1. *The J.C. Penney credit application.*

 As stated above, the plaintiff claims that he was denied credit by J.C. Penney based on adverse information contained in a report disseminated by the defendant, specifically, the $858.00 "past due debt" to CoreStates Bank.[3] (See defendant's "Reply Brief", Doc. 15, Exhibit A [as designated by this Court], consumer disclosure dated 8/14/85). The plaintiff asserts that the CoreStates entry was inaccurate because it reflects a balance owing and past due to CoreStates of $858.00. In fact, as already indicated, this debt was discharged pursuant to the aforementioned bankruptcy proceeding and, therefore, the plaintiff had no outstanding debt due and owing CoreStates. Thus, if J.C. Penney interpreted the $858.00 entry under the heading "Present Status" as meaning the plaintiff had a presently outstanding, past due debt owing to CoreStates, the entry would be inaccurate. As might be expected, it is the defendant's position that J.C. Penney did not interpret the entry in this manner but, rather, understood it to mean that a debt of $858.00 was discharged by the plaintiff's bankruptcy. Interestingly, the only evidence before us as to the meaning of the entries regarding the CoreStates account, other than the two consumer disclosures themselves, is a letter from defendant's counsel to plaintiff's counsel purporting to explain the cryptic codes utilized

---

**3.** We note that the plaintiff has not presented any evidence that J.C. Penney or any of the other entities from which the plaintiff sought credit denied the plaintiff's credit applications on the basis of the allegedly inaccurate and/or obsolete information contained in the reports they received from the defendant, as opposed to the plaintiff's bankruptcy. Likewise, the defendant in its summary judgment motion has not challenged the plaintiff's assertions that said prospective creditors denied the plaintiff's applications on the basis of adverse information which allegedly should not have been contained in the reports.

To recover in an action such as this, the plaintiff must prove:

(1) The defendant was negligent in that it failed to follow reasonable procedures to (a)

assure the maximum possible accuracy of its reports and/or (b) avoid violations of § 605 of the Act;

(2) The defendant, in fact, reported inaccurate or obsolete information about the plaintiff;

(3) He was injured; and

(4) The defendant's negligence was the proximate cause of such injury.

*See Morris v. Credit Bureau of Cincinnati, Inc.,* 563 F.Supp. 962 (S.D.Ohio 1983). Thus, "a consumer who (is) denied credit must show that the denial *was caused* by inaccurate [or obsolete] entries (which in turn were caused by the defendant's failure to use reasonable procedures), rather than by correct entries [such as, in this case, the plaintiff's bankruptcy] or any other factors". *Pendleton v. Trans Union Systems Corp.,* 76 F.R.D. at 195. (Emphasis added).

in the consumer reports. Even more interesting is the fact that this letter was proffered by the plaintiff as part of his summary judgment motion. (See plaintiff's Motion for Summary Judgment, Doc. # 13, Exhibit A). In the letter, counsel for the defendant explains that the "BKL" entry accompanying the CoreStates Bank account description means that the "manner of payment" of the debt was a "charge off" as a result of the plaintiff's bankruptcy. The plaintiff has introduced no contradictory evidence which would indicate that J.C. Penney interpreted the CoreStates entries in a manner other than that asserted by the defendant, *i.e.*, that an $858.00 debt owed by the plaintiff to CoreStates Bank was discharged by a bankruptcy and that the plaintiff presently had no outstanding debt due and owing CoreStates. As a result, we find that there is no genuine issue of material fact as to the accuracy of the report disseminated by the defendant to J.C. Penney, that the report, as interpreted by J.C. Penney, was accurate, and that the defendant is entitled to judgment as a matter of law as to this aspect of the plaintiff's action.

Further, the plaintiff has apparently chosen not to pursue its claim that the report received by J.C. Penney was inaccurate since it has failed to respond to the defendant's arguments in its summary judgment motion that the report was accurate. Thus, we believe we would also be justified in simply concluding that the plaintiff has abandoned this claim. *See, e.g., Teamsters Local No. 429 v. Chain Bike Corp.,* 643 F.Supp. 1337, 1338 n. 1 (E.D.Pa.1986).

2. *The other credit applications.*

The plaintiff next claims that the CoreStates entries, as contained in reports disseminated by the defendant after October 20, 1985, *i.e.*, seven years after the bankruptcy court's entry of an order for relief or adjudication in the plaintiff's proceeding, constituted obsolete information under § 605(a)(4) of the Act, since Core-States had charged the debt off to profit and loss more than seven years prior to the defendant's issuance of the reports. The 5/8/86 consumer disclosure, Exhibit B [as designated by this Court], attached to defendant's "Reply Brief", Doc. # 15, reflects that four consumer reports were disseminated by the defendant after October 20, 1985, to the following entities: CB Lanc. Co., Inc., E. Wright Real Estate, Fulton Bank, and Sears Roebuck & Co. Each of these reports indicated that CoreStates had charged off the $858.00 debt in October, 1978.

Section 605(a) of the Fair Credit Reporting Act in its relevant portions provides as follows:

Except as authorized under subsection (b) of this section, no consumer reporting agency may make any consumer report containing any of the following items of information:

(1) Cases under Title 11 or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than ten years.

\* \* \* \* \* \*

(4) Accounts ... charged to profit and loss which antedate the report by more than seven years.

\* \* \* \* \* \*

15 U.S.C.A. § 1681c(a)(1) and (4).

The plaintiff asserts that the reporting of the CoreStates account and the charge off was improper since the account constituted obsolete information under § 605(a)(4) of the Act. It is the defendant's position that the reporting of the charge off was completely proper since the reports clearly indicated that the charge off was the result of the order for relief entered by the bankruptcy court, *i.e.*, the discharge of the debt. We concur in the defendant's position.

The plaintiff explicitly states that he has no complaint that the defendant reported the fact of his bankruptcy; rather, the plaintiff's only grievance is that the defendant reported a debt discharged by the order of the bankruptcy court which had been charged off by the creditor more than seven years before the issuance of the reports. The plaintiff's position, in other words, is that the Act, during the three-

year "gap" created by §§ 605(a)(1) and (4) allows the defendant to report the fact of the plaintiff's bankruptcy, but not the specific debts discharged by the bankruptcy where those debts are charged off to profit and loss by the creditors as a result of that bankruptcy. We believe that the plaintiff's position is illogical.

The purpose of the Fair Credit Reporting Act, as stated by Congress, is to insure fair, accurate and equitable credit reporting. 15 U.S.C.A. § 1681. We believe that to adopt the position propounded by the plaintiff would be in direct contravention of these purposes and would obtain a result not intended by Congress, *i.e.*, blanket denials of applications for credit wherever the applicant had experienced a bankruptcy within the past ten years. In § 605(a)(1) of the Act, Congress made a decision that individuals who sought the shelter of the Bankruptcy Act should have this fact remain a part of their credit history for a period of ten years, as opposed to the seven-year period utilized in the other subsections of § 605(a). We do not believe, however, that Congress intended that each and every consumer who was adjudged bankrupt would be denied credit, without exception, whenever they had been so adjudged bankrupt because prospective creditors could not determine the specifics of the bankruptcy. This is the result, we believe, that would be attained were we to conclude that credit reporting agencies may only report the fact of a bankruptcy, but not the debts that were discharged.

In sum, we conclude that a credit reporting agency may report an account charged by the creditor to profit and loss as a result of the debtor's bankruptcy for a period of ten years under § 605(a)(1) of the Fair Credit Reporting Act. *But see*, John R. Fonseca, Handling Consumer Credit Cases, § 23:4 (2nd Edition 1980), in which the author concludes, without explanation or citation to authority, that "Accounts discharged in Bankruptcy may be reported for seven years from the date they are placed for collection or charged to profit and loss

but such reports must reflect their status as discharged."

An appropriate order follows. 

## ORDER

AND NOW, this 1st day of June, 1987, upon consideration of the defendant's motion for summary judgment, the plaintiff's response thereto and his cross-motion for summary judgment and the memoranda of law submitted by the parties in support of their respective positions, IT IS ORDERED that the defendant's motion is GRANTED, the plaintiff's motion is DENIED, and that judgment is entered in favor of the defendant and against the plaintiff.