487 F.2d 403
 Annette GLOVER, on behalf of herself and her minor child,
Chalyce, et al. Plaintiffs-Appellees,
v.
Georgia L. McMURRAY, Individually and as Commissioner of the
Agency for Child Development of the City of New
York, et al., Defendants-Appellants.
 Nos. 1096, 1106, 1107, Dockets 73-1876, 73-1904, 73-1906.
 United States Court of Appeals,
Second Circuit.
 Argued June 26, 1973.
Decided Nov. 7, 1973.
 
 Marcia Cleveland, New York City (Louis B. York, Manhattan Legal Services, Marttie L. Thompson, Community Action for Legal Services, Inc., New York City, on the brief), for plaintiffs-appellees.
 Jerold Probst, Deputy Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for defendants-appellants.
 Before LUMBARD, HAYS and TIMBERS, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Southern District of New York, 361 F.Supp. 235, ordering the defendants to restore day care services to plaintiffs (including reimbursement for any day care services rendered during the pendency of this action) and enjoining the defendants from denying day care services to any applicant because of failure to submit Form DSS 2105 (Day Care Application and Eligibility Report) until that form is revised in accordance with the district court's opinion. In issuing the injunction, the district court found that there was a likelihood that the plaintiffs would succeed on their claim that defendant McMurray failed to give adequate notice to the plaintiff parents of the termination of the funding of the day care centers. Using this finding as a basis for pendent jurisdiction, the district court then found that Form DSS 2105[1] violated the Social Security Act.
 
 
 
 * * *
 
 
 
 2
 * * *
 
 
 
 * * *
 
 
 
 3
 * * *We reverse the decision of the district court. We hold that the plaintiffs' due process claim does not present a substantial constitutional issue. Pendent jurisdiction over the statutory claims must therefore fail.
 
 
 4
 By Administrative Letter 73 PWD-35 issued by the defendant Commissioner of the Department of Social Services of the State of New York on March 15, 1973, day care centers were required to fill out Day Care Application and Eligibility Report, Form DSS 2105. These forms were mailed by the Commissioner of the Agency for Child Development of New York City to the some 400 day care centers in the New York City area, with an accompanying letter informing them that the forms must be filled out and returned to the Agency for Child Development. Of the 400 day care centers 385 eventually complied with this request and filled out and returned Form DSS 2105. The fifteen remaining day care centers, now plaintiffs in this action, refused to complete and return the form. Consequently, on March 30, the Commissioner for the Agency for Child Development instructed the day care centers that had refused to comply that the form must be completed, and that if the form was not completed and returned by April 9, 1973 action would be taken to "close out your account with this agency."[2] The day care centers which had refused to comply were offered technical advice in establishing the eligibility of families and were given an opportunity to meet with representatives of the Agency to discuss the procedure necessary for compliance.
 
 
 5
 The fifteen day care centers, however, continued in their refusal to submit Form DSS 2105 and on April 12, 1973 the Commissioner notified the day care centers that agency funds for their center would be terminated, although funding would be continued for another week. The letter of April 12[3] also contained an instruction to the day care centers that they were obligated by state law to inform the parents of their right to a fair hearing:
 
 
 6
 "FAIR HEARING
 
 
 7
 "If you have been serving parents who may be eligible in accordance with Day Care Procedure # 3, you have the responsibility under State law to inform these parents of their right to a fair hearing.
 
 
 8
 "To insure the parents being informed of their rights, a letter to them is enclosed informing them of their right to have their status determined."
 
 
 9
 The letter of April 12 contained such a letter[4] to the parents. This letter informed the parents of the name and telephone number of the Resource Director in their area. The letter also indicated that in the event of a favorable determination of eligibility their child or children would be placed in an alternative day care center.
 
 
 10
 When the funding for these centers was terminated plaintiffs, who include both day care centers and the individual recipients of day care services, brought this action seeking injunctive and declaratory relief under 28 U.S.C. Sec. 1343, 42 U.S.C. Sec. 1983, and 28 U.S.C. Secs. 2201-2202. The plaintiffs contended that the submission of Form DSS 2105 violated their right to privacy; that Form DSS 2105 bore no rational relation to a valid State goal and was therefore constitutionally infirm; that Form DSS 2105 violated the Social Security Act and HEW regulations; and finally, that the defendant's failure to give the plaintiffs adequate notice and a hearing before terminating day care center funds constituted a deprivation of due process.
 
 
 11
 Plaintiffs rely upon 28 U.S.C. Sec. 1343(3) as the basis for jurisdiction in this case. To establish jurisdiction under this statute, a substantial constitutional claim must be advanced. See, e. g., Hagans v. Wyman, 462 F.2d 928 (2d Cir. 1972); Almenares v. Wyman, 453 F.2d 1075, 1082 n. 9 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).
 
 
 12
 Plaintiffs' major constitutional argument, accepted by the district court, is that they were denied due process of law because the defendants failed to give adequate notice that the funding of the day care centers was to be terminated. Plaintiffs contend that the notice was inadequate because the parents of the children affected by the termination of funding were not directly notified by the defendants, and that notice to the day care centers was inadequate to meet the constitutional standard. Plaintiffs also contend that the notice was inadequate because it was given, at most, only six days before funding was terminated.[5]
 
 
 13
 Due process is limited by the practicalities of the situation presented. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The plaintiffs in the instant case conceded that all information about the individual plaintiffs, who were the parents of the children affected by the termination of funding, was kept in strict confidence at the various day care centers; in fact, this was part of the information that the day care centers were protecting in refusing to complete DSS Form 2105, the act which prompted the termination of funding. Given this situation, there was no practical way for the State to notify the individual plaintiffs. Due process does not require the State to engage in impractical searches to obtain such information. In Mullane, supra, the Supreme Court said,
 
 
 14
 "we have no doubt that such impracticable and extended searches are not required in the name of due process." Id. at 317-318, 70 S.Ct. at 659.
 
 
 15
 In short, the State had no duty to ferret out the names and addresses of the parents, even if it was possible for the State to obtain such names and addresses, a possibility that has not been shown in the instant case. This is especially so in the situation in which the State was prevented from obtaining the information by the action of the day care centers.
 
 
 16
 Since the State through a reasonable expenditure of resources was not able to notify the parents individually of the termination action, it adopted the best means available to provide notice to the parents. It contacted the day care center and indicated to the day care center that it had an obligation under state law to inform the parents that they had a right to notice and a hearing on the termination of funding. It also sent to each day care center sufficient copies of an open letter from the Commissioner to the parents with instructions that the day care centers distribute them to the affected parents. This letter informed the parents of the action contemplated and gave them the name and telephone number of the Resource Director in their area. The letter also indicated that after a determination of eligibility had been made their child or children would be placed in an alternate day care center.
 
 
 17
 In our view, these efforts by the State to furnish adequate notice to the parents fulfilled the requirements of due process of law under the conditions presented.[6]
 
 
 18
 Since we find the due process claim to be insubstantial, no jurisdiction exists to consider the statutory claims urged by plaintiffs. Plaintiffs also assert 28 U.S.C. Secs. 2201 and 2202 as basis for jurisdiction. However, it is well settled that 28 U.S.C. Secs. 2201 and 2202, providing for declaratory judgments, cannot be used as a basis for jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).
 
 
 19
 We remand this case with instructions to dismiss for want of jurisdiction.
 
 TIMBERS, Circuit Judge (dissenting):
 
 20
 Under the same standard we applied in Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Company, Inc., 476 F.2d 687, 692-93 (2 Cir. 1973), in there affirming Judge Duffy's order granting a preliminary injunction, I think Judge Duffy's order in the instant case granting a preliminary injunction likewise should be affirmed.
 
 
 21
 Turning directly to the central issue upon which the majority opinion turns, with deference I believe that plaintiffs have demonstrated that their due process claim presents substantial constitutional questions-ones which, at the very least, may fairly be said to be "serious questions going to the merits which warrant further investigation and trial." Gulf & Western, supra, 476 F.2d at 692-93, and authorities there cited. In my view, the due process clause requires better notice than was provided here. The notice given by the state was not timely, did not adequately explain the rights of the recipients, and was not the most effective available method of notice.
 
 
 22
 The jurisdictional underpinning for this action therefore was provided by the Civil Rights Act, 42 U.S.C. Sec. 1983 (1970), and its jurisdictional implementation, 28 U.S.C. Sec. 1343(3) (1970). It follows that there is pendent jurisdiction over the statutory claims.
 
 
 23
 Defendants certainly have not complied with 45 C.F.R. Sec. 205.10 (1973) which requires that each claimant be given an opportunity for a fair hearing before the state agency if he feels aggrieved by agency policy as it affects his situation. The same regulation requires that notice be mailed at least fifteen days before action is taken by the agency. Clearly the notice sent to the day care recipients via the day care centers did not comport with that requirement. Moreover, the action of defendants in terminating funding to the centers is "agency policy" directly affecting the recipients. Thus, the fair hearing requirements of the regulation are here applicable.
 
 
 24
 The deficiencies of Form DSS 2105 are evident from a reading of the Social Security Act and the regulations promulgated thereunder. By failing to provide a deduction for work-related expenses in calculating net earned income for the purpose of determining eligibility, Form DSS 2105 clearly does not meet the requirements of 42 U.S.C. Sec. 602(a)(7) (1970). An examination of 42 U.S.C. Sec. 622(a)(1)(C)(iii) and (iv) (1970) indicates that Sec. 602(a)(7) and not Sec. 622 is the controlling provision as to financial eligibility regardless of the nature of the welfare program.
 
 
 25
 Finally, it seems to me that the affirmation at the end of Form DSS 2105 conflicts with 45 C.F.R. Secs. 205.20(a)(3) and 206.10(a)(12)(iii)(a) (1973). The affirmation certainly appears to require the applicant for benefits to grant in advance a blank consent to all investigations regarding eligibility. By contrast, the regulations require that the state proceed on a step by step basis, informing the applicant at each stage as to what information is desired, why it is desired, and how it will be used. I think that Judge Duffy acted clearly in accordance with the law in requiring that the form be revised to comply with the regulations.
 
 
 26
 In short, plaintiffs demonstrated a probability of success on the merits and, upon a balancing of the relative hardships to the parties, that irreparable injury would be sustained by the recipients in terms of loss of jobs and training if day care services were terminated during the pendency of this action. Furthermore, in balancing the equities, we should not lose sight of the strong public interest considerations which impelled Judge Duffy to grant the preliminary injunction. We have held such considerations to be paramount. Gulf & Western, supra, 476 F.2d at 698-99.
 
 
 27
 I would affirm the order and judgment of the district court in all respects.
 
 
 
 [1]
 The Form states in relevant part:
 Form DSS-2105 (2/73)
 SIGNATURE OF APPLICANT OR HIS/HER REPRESENTATIVE
 To be Signed When Applicant Applies Personally
 I hereby apply for services and certify that all of the information contained herein is true and correct to the best of my knowledge and belief and that no facts have been omitted. I make this application with the understanding that I will furnish any additional information which may be required, and I will report immediately, any changes in circumstances, including changes in financial resources.
 I understand that my application may be investigated and I agree to cooperate in such an investigation. I further understand that the law provides for fine or imprisonment, or both, for a person hiding facts or not telling the truth.
 SIGNATURE OF APPLICANT X
 DATE SIGNED
 To Be Signed When Representative Applies for Applicant
 I hereby submit this application for services on behalf of the applicant named above, and furnish the information contained in the application based upon knowledge and information obtained from the applicant. The information furnished is true and correct to the best of my knowledge and belief. This application is submitted with the understanding that verification of the information may be required and that such verification will be obtained if required.
 SIGNATURE OF REPRESENTATIVE OF APPLICANT X
 DATE SIGNED
 ADDRESS
 FORM COMPLETED BY
 In view of the portion of the concurring and dissenting opinion relating to the "affirmation" at the end of Form DSS 2105, it might be well to note that plaintiffs have made no claim of any improper investigations on the part of the state agencies involved and that the consent presented for signature is no more than would be reasonably required of any recipient of state funds.
 We are persuaded that the requirement of the Form does not on its face raise any problem, either statutory or constitutional.
 
 
 [2]
 The text of the letter from Georgia McMurray to the day care centers on March 30, 1973 was as follows:
 "You have been previously advised of your responsibility to submit admission forms verifying the eligibility of families to receive publicly subsidized day care services at your center. As of March 23, 1973 this Agency had not received any such forms from you.
 "Therefore, no further funds will be authorized by this Agency for your center. The check which you received in March, 1973 carried sufficient funds to cover your first payroll in April. If you choose not to have your funding disrupted, you can submit admission forms for eligible families enrolled at your center by April 9, 1973. After this date if no forms have been received, you will be advised that action is being taken to close out your account with this Agency. Individual instructions will be issued regarding procedures in this regard.
 "A meeting has been scheduled at 240 Church Street in the Basement Conference Room on Wednesday, April 4, 1973 at 10:30 to discuss this Agency's procedures on compliance. Further, technical assistance is available through the ACD Resource Centers to assist you in establishing eligibility of families if you so desire."
 
 
 [3]
 The text in full of the letter of April 12, 1973 to the day care centers was as follows:
 According to our records, you were advised by letter dated March 30, 1973, that due to your failure to complete and submit required eligibility forms, the Agency for Child Development could no longer expend public funds for purchase of day care services from your organization.
 We are, therefore, implementing the following procedures to assure the orderly termination of our relationship.
 FINANCIAL ACCOUNTING
 Prior to April 30, 1973, the Agency will send one of its auditors to your center to complete the closing of the books between the Agency for Child Development and your center. The books must be retained on the premises until the auditor has completed his review. The Director and Bookkeeper should be retained on staff until April 30, to assist the auditor in determining what outstanding items are reimburseable [sic] and the amount of vacation pay due your employees.
 We will reimburse for the salary of the Director and Bookkeeper through April 30, and will also reimburse for rent through the month of April.
 We will shortly be forwarding a check to you for payment of staff salaries and sufficient funds to cover meals through April 18, 1973, and thereafter, forward checks for the employees' vacation pay and other outstanding reimbursable items.
 REGISTRATION OF ELIGIBLE PARENTS
 Since staff salaries will be paid through April 18, 1973, we request that enough staff remain available to assist eligible parents who wish to place their children in publicly-funded day care programs. These parents should be told to call the Agency for Child Development Vacancy Information Unit at 553-6576. Top priority for placement will be given to them.
 EQUIPMENT
 In accordance with applicable City law, all equipment purchased with Agency funds is the property of the City and must be returned to the Agency for Child Development. Prior to April 30, we will inform you of arrangements that have been made to pick up this equipment. If you plan to continue providing day care services with private funds and want to purchase this equipment from the City, we will work out a payment schedule with you or, if you wish, deduct payment from monies due you.
 INSURANCE
 The Agency for Child Development has, during the tenure of your sponsorship, assumed the cost of all insurance premiums relative to your employees and the premises. As your center is no longer eligible for public funds, we will be notifying our insurance carrier to this effect. If your center plans to continue in operation, it is imperative that you immediately secure liability, fire, health, accident, theft and any other insurances required by law. We will be informing your landlord that insurance coverage on your behalf will no longer be the obligation of the Agency. Assistance, if necessary, will be available to transfer this insurance to your own carrier, at your expense.
 FAIR HEARING
 If you have been serving parents who may be eligible in accordance with Day Care Procedure #3, you have the responsibility under State law to inform these parents of their right to a fair hearing.
 To ensure the parents being informed of their rights a letter to them is enclosed informing them of their right to have their status determined.
 
 
 [4]
 The text of the "Open Letter to the Parents" sent to the day care centers on April 12, 1973 reads as follows:
 "Dear Parent:
 "We regret to inform you that because of the failure of your center to submit information verifying the eligibility of families to receive publicly subsidized day care services, funds are being withdrawn from your center.
 "State and federal regulations mandate that recipients of public assistance and Social Services be informed of their right to a Fair Hearing, should their services be discontinued. However, the method of termination differs relative to individual status and kind of service received.
 "Because you have not identified the category from which your eligibility could or could not be determined, we can only inform you of your rights when the information required is submitted.
 "To inform you of your rights and to determine your eligibility, please call the Resource Center Director in your area. JOSEPHINE CLARK at 433-6618. If eligible, your child will be placed in an alternate day care service in your neighborhood."
 
 
 [5]
 The centers indicated that they received the letter of April 12th on April 16th and 17th
 
 
 [6]
 In reaching the conclusion that the notice given in the instant case did not violate due process of law, we need not pass on defendant's claim that no notice was required in this situation. We merely hold, that assuming notice was required, the notice given in the instant case does not raise a substantial question of constitutional law