Harmel OUELLETTE and Lila Ouellette, Clifton Browne and Edla Browne, Aldee Plouffe and Shirley Plouffe, Individually, on behalf of themselves, and on behalf of all similarly situated plaintiffs

and

H. Vaughn Griffin, Sr., Ardath Griffin, Alan Thorndike, Ellen Thorndike, Wesley C. Larrabee, Virginia Larrabee, F. Alfred Patterson, Jr., and Lois T. Patterson, Plaintiff-Intervenors,

v.

INTERNATIONAL PAPER COMPANY.

Civ. A. No. 78–163.

United States District Court,
D. Vermont.

April 24, 1980.

Peter F. Langrock and Susan Humphrey, Langrock, Sperry, Parker & Stahl, Middlebury, Vt., for plaintiffs.

John M. Dinse and Spencer Knapp, Dinse, Allen & Erdmann, Burlington, Vt., James W. B. Benkard, Robert M. Hunziker and Kevin Simmons, Davis, Polk & Wardwell, New York City, for defendant.

## OPINION AND ORDER

COFFRIN, District Judge.

In this diversity action for damages and injunctive relief, plaintiffs have moved for certification of two plaintiff classes pursuant to Fed.R.Civ.P. 23. The Complaint is styled in two "causes of action" and different classes are proposed for each. Defendant opposes certification of both proposed classes.

### Facts

This action began on July 5, 1978, in Vermont's Addison County Superior Court and defendant properly removed it to this court on July 25, 1978. Following removal several of the presently named plaintiffs were permitted to intervene. This case is the latest expression of some Vermonters' unhappiness with the condition of Lake Champlain's waters. It represents a continuation of both private, *e. g., Zahn v. International Paper Co.*, 53 F.R.D. 430 (D.Vt. 1971), *aff'd*, 469 F.2d 1033 (2d Cir. 1972), *aff'd*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), and public efforts to impose liability on International Paper Company (IPC) for its discharges into Lake Champlain. *Vermont v. New York*, 406 U.S. 186, 92 S.Ct. 1603, 31 L.Ed.2d 785 (1972) (motion for leave to file bill of complaint granted), *dismissed*, 419 U.S. 955, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974); *see* Note, *The Battle of Lake Champlain—Interstate Pollution and the Inadequacy of the Judicial Process*: Vermont v. New York, 1 Vt.L.Rev. 175 (1976).

Plaintiffs are Vermont residents who own property on or near the "south lake" area of Lake Champlain in the vicinity of the Crown Point Bridge; defendant is a New York corporation with its principal place of business in New York. It operates a paper mill near Ticonderoga, New York, across the south lake from plaintiffs' property. Jurisdiction is grounded on 28 U.S.C. § 1332(a).

Plaintiffs request certification of two classes which we will refer to as the "water class" and the "air class." The water class would consist of approximately 400 lakeshore property owners and lessees in the towns of Shoreham, Bridport and Addison. Plaintiffs claim on behalf of this class that IPC's discharge of papermaking waste into Lake Champlain constitutes a nuisance that diminishes the value and interferes with the enjoyment of their property.

The air class would consist of approximately 3150 property owners, lessees and residents in Shoreham, Bridport, Addison and Orwell. On behalf of this class plaintiffs claim that the airborne discharges from defendant's paper mill travel across Lake Champlain and create a nuisance in the designated towns. In addition to diminished property value, plaintiffs claim this class has suffered impaired health as a result of defendant's alleged air pollution.[1]

On behalf of both proposed classes plaintiffs seek monetary damages and equitable relief ordering IPC to relocate the source of its water intake system closer to the source of its waste discharge system.

### Discussion

To maintain this as a class action, plaintiffs must satisfy the four prerequisites of Fed.R.Civ.P. 23(a) and the two elements of the rule 23(b)(3) form of action they propose. We consider these separately below.

#### 1. Prerequisites

■ We have no difficulty finding that the proposed classes are sufficiently numerous that joinder is impracticable, Fed.R. Civ.P. 23(a)(1), and that there are questions of law or fact common to the classes. *Id.* (a)(2). Although numbers alone do not determine impracticability of joinder, *see, e. g., EWH v. Monarch Wine Co.*, 73 F.R.D. 131, 133 (E.D.N.Y.1977), and geographical distribution of a proposed class is of considerable importance, *Glover v. McMurray*, 361 F.Supp. 235, 241 (S.D.N.Y.), *rev'd and remanded on other grounds*, 487 F.2d 403 (2d Cir. 1973), *vacated and remanded on other grounds*, 417 U.S. 963, 94 S.Ct. 3166, 41 L.Ed.2d 1136 (1974), we are nevertheless persuaded by the numbers involved in the proposed classes. Defendant does not dispute plaintiffs' approximations of size—determined on the basis of information obtained from the respective Towns' Clerks and population reports in the *Vermont Year Book*—and we have found such numbers to

be convincing in the past. *D. C. v. Surles*, No. 78–91 (D.Vt. December 6, 1978).

■ Similarly we are satisfied that there are questions of law and fact common to the classes. Plaintiffs seek redress for injuries allegedly caused by continuing acts of defendant. Central to the claims of all members of the proposed classes are the fact questions of the quality, amount and distribution of defendant's discharges and the legal questions of defendant's liability therefor. In addition, defendant may have defenses that would be common to the claims of all the class members. These questions are "shared in the grievances of the prospective class[es] as defined," 3B *Moore's Federal Practice* ¶ 23.06–1, at 23–173 (2d ed. 1979), and we conclude that the requirement of rule 23(a)(2) is also met in this case. Although in its argument concerning rule 23(b)(3) defendant opposes certification on the basis of rules 23(a)(1) and (2) its primary contention is that rules 23(a)(3) and (4) are not satisfied.

Rule 23(a)(3) requires that the proposed representative's claims be typical of the claims of the proposed class.

■ At least one commentator doubts that rule 23(a)(3) imposes a requirement of independent significance, 3B *Moore's Federal Practice* ¶ 23.06–2, at 23–185 (2d ed. 1979), but we are more inclined to agree with Judge Muir that we should not lightly conclude that a meaningless provision was promulgated. *In re Anthracite Coal Antitrust Litigation*, 78 F.R.D. 709, 716 (M.D.Pa. 1978); *see, e. g., Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 269–70 (10th Cir. 1975) (rule 23(a)(3) requires comparison of plaintiff's claims with those of proposed class). We are satisfied, however, that a comparison of the named plaintiffs' claims with those of the proposed classes need not reveal identity to be "typical." "Factual variations are not fatal to a proposed class when the claims arise out of the same remedial and legal theory." *Wofford v. Safeway*

---

1. At the hearing on plaintiffs' motion for class certification the argument of plaintiffs' counsel regarding the allegation in the complaint of impaired health was somewhat equivocal. The court did not understand, however, that the claim was being withdrawn.

*Stores, Inc.*, 78 F.R.D. 460, 488 (N.D.Cal. 1978). To be "typical," plaintiffs' claims must be "co-extensive with, and not inimical to, those of the proposed class," *Levine v. Berg*, 79 F.R.D. 95, 97 (S.D.N.Y.1978), and they must not be subject to unique defenses that are inapplicable to other members of the proposed class. *Greenspan v. Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y. 1978). The rough benchmark in this circuit appears to measure typicality by the likelihood that all members of the proposed class "'will be helped'" if the would-be representatives establish their claim, *Gill v. Monroe County Department of Social Services*, 79 F.R.D. 316, 326 (W.D.N.Y.1978) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)), and the lack of adverse interests between the named plaintiffs and the proposed class members. *Women's Committee for Equal Employment Opportunity v. National Broadcasting Co.*, 71 F.R.D. 666, 670 (S.D.N.Y.1976); *Cutner v. Fried*, 373 F.Supp. 4, 13 (S.D.N.Y.1974).

■ Defendant, relying on its depositions of plaintiffs, argues that they do not all allege the same kinds of damage they claim on behalf of the classes they purport to represent. According to defendant this proves as a matter of logic that plaintiffs' claims are not typical. But defendant appears to misapprehend the nature of rule 23(a)(3)'s requirement. Although the Advisory Committee's notes, Proposed Amendments to Rules of Civil Procedure for the United States District Courts, 39 F.R.D. 69, 100 (1966), do little to illuminate this aspect of the rule, decisional law has made clear that whether or not it has independent significance the importance of the typicality requirement lies in assuring that the named plaintiffs will adequately represent those who are unnamed. *Rosado v. Wyman*, 322 F.Supp. 1173, 1193 (E.D.N.Y.), *aff'd*, 437 F.2d 619 (2d Cir. 1970), *aff'd*, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971). Differences in the degree of harm suffered, or even in the ability to prove damages, *Sanders v. Faraday Laboratories, Inc.*, 82 F.R.D. 99, 101 (E.D.N.Y.1979), do not vitiate the typicality of a representative's claims. Typicality, therefore, should be evaluated in terms of the plaintiffs' claims as to liability. *Id.*, cases cited therein.

■ With this in mind, we find the named plaintiffs' claims typical of the classes they seek to represent. Proof of defendant's liability for the alleged pollution of the air and Lake Champlain will benefit all members of the proposed classes, *Eisen* ; that the damages, if any, may reach a de minimis level at some point among the class members does not make the named plaintiffs' claims atypical.

■ The last prerequisite of rule 23(a) is that the representatives must fairly and adequately protect the interests of the class. Of considerable importance to our finding on this issue is the competence of plaintiffs' counsel, *Eisen*, 391 F.2d at 562, which defendant concedes. We concur. Nevertheless, defendant contends that issues going to proof of damages will create antagonism among the class members making their representation by plaintiffs inadequate. This contention is easily disposed of by noting that there is no necessity that all issues be tried in one proceeding. The class aspects may be tried before the individual damage claims, if that should prove necessary. *See In re Caesars Palace Securities Litigation*, 360 F.Supp. 366, 399 (S.D.N.Y.1973) (individual questions of reliance and damages not fatal to class action charging securities violations); *Dolgow v. Anderson*, 43 F.R.D. 472, 490 (E.D.N.Y.1968) (common issues need not dispose of entire litigation).

Thus we find that the proposed classes satisfy the prerequisites of rule 23(a).

2. Maintenance of 23(b)(3) action.

Defendant's most strenuous objection to certification of these classes relates to the rule 23(b)(3) elements. To maintain an action under subdivision (b)(3), plaintiffs must demonstrate, and the court must find, that common questions of fact or law predominate and that a class action is superior to other methods available for fair and effi-

cient adjudication of the controversy. Defendant contends that neither of these characteristics obtains in this case.

Defendant's contentions also go to the heart of an emerging and important question concerning the propriety of class action as a procedure for redressing environmental injury. This question has lurked in the background of the few decisions we have found involving claims similar to those of the instant case, but it has not been addressed directly, so far as we have been able to determine. In cases of this kind the allegedly harmful discharges are released into the environment in a concentrated state at a source. They disperse thereafter in a manner dictated by natural forces, and their effect, if any, on the surrounding environment is necessarily a function of proximity to the source and prevailing natural conditions. Because of this, no two property owners at random points in an affected area are likely to urge the same pattern of dispersion. Defendant points this out and argues from it that plaintiffs' claims are therefore atypical and that plaintiffs are unable because of their individual interests to protect fairly and adequately the interests of the class. This assertion reduces itself inexorably to the proposition that a class action may never proceed against an alleged polluter; defendant's logic would almost invariably disqualify each would-be member from representing the proposed class. Therefore, before proceeding with our analysis of subdivision (b)(3), we feel constrained to respond to defendant's assertion and examine the general proposition to which it leads.

■ The function of subdivision (b)(3) is to reach the group of cases for which class treatment would be inappropriate under the (b)(1) or (b)(2) categories but would be convenient and desirable nevertheless. In the Advisory Committee's words, subdivision (b)(3) was intended for "those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other unde-

sirable results." Proposed Amendments, 39 F.R.D. at 102–03.

■ The Advisory Committee felt that some categories of cases, mass accidents for instance, would be inappropriate for class action because of the likelihood of individual questions of liability and defenses to liability. *Id.* at 103. The same might be true of certain kinds of private damage antitrust cases. *Id.* We find the Committee's inclusive language more descriptive of the kind of case presently before us than its exclusive language. We have not found a case to suggest the contrary. We conclude that as a genre the instant case is not inappropriate for class treatment and we reject the implication of defendant's argument. As a theoretical matter, we find, for instance, that it would be desirable from the standpoint of consistency and convenience to develop in a single proceeding the quantum, quality and dispersion pattern of a source's discharges. Time, effort and expense might be saved by such a procedure, even though all issues may not be resolvable at once. In separate trials the questions of fact respecting defendant's discharges and their dispersion might be resolved inconsistently, contrary to sense and logic. Similar inconsistency could arise with separately determined questions of liability or defenses to liability, and this would be undesirable as a matter of "uniformity of decision as to persons similarly situated." *Id.* In our opinion the type of suit represented by this case is not the sort envisioned by the Advisory Committee as generally inappropriate for class treatment under subdivision (b)(3). *See also* Weinstein, *Some Reflections on the "Abusiveness" of Class Actions*, 58 F.R.D. 299, 305 (suggesting the propriety of class action in the area of environmental control). There are fundamental differences between the case plaintiffs bring and the "mass accident" case that concerned the Advisory Committee, which we will discuss below. But what is important at this point in our discussion is that the Advisory Committee felt the considerations of rule 23(b)(3) were fatal to class treatment of a "mass accident," whereas defendant in effect is urg-

ing that the considerations of rule 23(a) are fatal to class treatment of the instant sort of case. We have found no support for such a conclusion in law or logic, and we find it contrary to the thinking behind rule 23.

It remains, then, for us to consider whether the instant case satisfies the two requirements of subdivision (b)(3).

### Predominance of Common Questions of Law and Fact

Defendant's position is that the differences among the proposed classes' members do not relate merely to the damages each claims, but go to the issue of IPC's liability for the claimed damages. In defendant's view this is a case in which liability is a separate issue as to each member of the proposed classes, which makes individual questions predominate over the common ones. The cases that it cites in support of this contention are mostly cases where the actual definition of the proposed class depended on individual findings of liability. In *Pendleton v. Trans Union Systems Corp.*, 76 F.R.D. 192 (E.D.Pa.1977), the court denied certification of a class of consumers who were denied credit because of errors in the defendant's credit reports. The court observed that because there could be no liability without an erroneous or inaccurate credit report it would not be possible to establish liability as to an entire class without resolving separate questions about individual reports. This was not a case such as *Biechele v. Norfolk & Western Railway Co.*, 309 F.Supp. 354 (N.D.Ohio 1969), where in the *Pendleton* court's opinion, "geographic limitations defined the class in such a way that the Court could conclude that all of the plaintiffs were injured in various respects and to various extents by the defendant's operations." *Pendleton*, 76 F.R.D. at 195.

*Yandle v. PPG Industries, Inc.*, 65 F.R.D. 566 (E.D.Tex.1974) is to the same effect. The plaintiffs sought certification of a class of former employees and survivors of former employees allegedly suffering illness and death from exposure to asbestos in the defendant's plant. The court denied certification because among the class there were varying periods of exposure to varying concentrations of asbestos; some may have had pre-existing illnesses; and individual questions existed as to the availability and use of safety devices, and the availability of affirmative defenses such as the statute of limitations. In short, the uncommon questions bearing on the defendant's liability at all to each class member were predominant. Viewed another way, this was a case where, as in *Pendleton*, the class of those to whom the defendant would be liable could not be defined without separate trials on the liability issues.

In *Boring v. Medusa Portland Cement Co.*, 63 F.R.D. 78 (M.D.Pa.), *appeal dismissed*, 505 F.2d 729 (3d Cir. 1974), residents of York County, Pennsylvania, sought to maintain a class action for damages and injunctive relief against two defendant corporations whose operations released contaminants into the air. The court denied class certification, observing that the only common fact alleged by the claims of the proposed class was that their damages were caused by the same source. *Id.* at 84. The variety of types of damage alleged made a single finding of liability impossible in a single mass proceeding. *Id.* at 85.

Unlike these and the "mass accident" cases defendant cites, the water class in the present case offers a geographically discrete group asserting theoretically consistent claims as to which individual defenses to liability do not appear. Identical evidence would be required in each individual's case to determine whether IPC pollutes Lake Champlain and is liable to lakeshore owners and lessees whose property values and enjoyment, including recreational use, are diminished thereby. *See Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558 (S.D. Fla.1973), *aff'd*, 507 F.2d 1278 (5th Cir. 1975) (class treatment of defendant's negligence in supplying contaminated food and water for cruise passengers' consumption); *American Trading and Production Corporation v. Fischbach & Moore, Inc.*, 47 F.R.D. 155 (N.D.Ill.1969) (class treatment of defendant's negligent handling of electrical wiring in exhibition hall resulting in fire

damage to exhibitors' goods). Moreover, the water class in this case differs fundamentally from the "mass tort" class that the Advisory Committee considered inappropriate for certification: there are no personal injuries claimed and there are no individual defenses asserted. *See* Judge Steger's discussion in *Yandle*, 65 F.R.D. at 569.

■ We find that in a class treatment of the facts respecting IPC's discharges and its liability for diminished property value and enjoyment of use caused thereby, common questions will predominate.

We do not, however, find that this is so as to the entire proposed water class. The Town of Addison fronts on a lake that is markedly different from that which meets the Towns of Bridport and Shoreham. Addison lies north of the Crown Point Bridge in an area known locally as the "broad lake," which is deeper and composed of water that is of a generally different quality than that of the "south lake" where Bridport and Shoreham are located. In addition, none of the proposed class representatives resides in Addison, which raises doubts about the adequacy of Addison residents' representation. We conclude therefore that a water class comprised of all three Towns' lakeshore property owners would be inappropriate. Thus we limit our final conclusions about the propriety of a water class to those proposed class members residing in Shoreham and Bridport.

■ The proposed air class presents a somewhat different picture. This class is more like that proposed and denied in *Boring*, where the "nature of the differing injuries runs the gamut from damage to fee simple and leasehold interests in real estate to damaged personalty, unpleasant surroundings and . . . compensable personal injury." *Boring*, 63 F.R.D. at 84–85. Defendant would no doubt offer separate defenses to the claims of impaired health, and such claims are likely to be the kind that individuals have an interest in prosecuting separately. Fed.R.Civ.P. 23(b)(3)(A). *See Yandle*, 65 F.R.D. at 572 ("[M]embers of the purported class have a vital interest in controlling their own litigation because it involves serious personal injuries . . . .").
There is no " 'common nucleus of operative facts,' " *Eisen*, 391 F.2d at 566 (citing *Siegel v. Chicken Delight Inc.*, 271 F.Supp. 722 (N.D.Cal.1967)), that unites the liability claims of this proposed class as there is in the water class. Whereas the pollution of the lake may uniformly limit the enjoyment and decrease the value of all lakeshore property because the lake is a common source of recreation, the same may not be said of air pollution's effect on the inland property. For instance, unpleasant odors may not affect the value of a dairy farm, if at all, in the way they would a strictly residential area. The various uses to which property is put in the area of the proposed air class makes class treatment of property damage claims as inappropriate as class treatment of health impairment claims. We find that common questions of law and fact will not predominate in a class treatment of the air class's claims and we therefore deny certification of the air class.

### Superiority of Class Action

■ We have considered the matters pertinent to our findings under subdivision (b)(3), Fed.R.Civ.P. 23(b)(3)(A)–(D), and the alternative methods for handling this litigation, and we find that class treatment of the water class's claims would be superior. The claims are not such that class members would be interested in individual prosecution, we are aware of no litigation currently under way that involves this controversy, the desirability of uniform decisions respecting the class's claims counsels for concentrating the claims in a single forum, and the proposed class presents no management difficulties as the class is finite and easily identifiable. The alternatives of joinder and intervention do not offer the simplicity and conclusiveness of proceeding with these claims as a class action. IPC may offer its defenses in one forum at one time and, if successful, can put an end to this kind of litigation over the polluting effects of its discharges. The class members can pool their resources, present their most effective

case in one proceeding and share the benefits if they succeed.

We conclude that the water class, as limited, meets the requirements of rule 23 and certify the lakeshore owners in the Towns of Bridport and Shoreham as a class to maintain this suit.

### 3. Notice

Rule 23(c)(2) requires that the court direct to the class members the best notice practicable under the circumstances. This includes individual notice to those members who can be identified through reasonable effort. It appears that the class members in this case can be identified rather easily through town records, and we direct plaintiffs to determine who the individual class members are within twenty-one days from the date of this order. Within the same period, plaintiffs and defendant are directed to prepare jointly a draft of a proposed notice to the class members and submit it to the court for its consideration. SO ORDERED.