Ruby LEACH, individually and on behalf of all past and present employees of Standard Register of Fayetteville, Arkansas, as well as on behalf of all past and present applicants for employment at Standard Register of Fayetteville, Arkansas, Plaintiff,

v.

STANDARD REGISTER COMPANY, Defendant.

Civ. No. 81–5068.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

June 1, 1982.

---

3. Fees:

| | Krinsky | Johnson | Cruhlac |
|---|---|---|---|
| Hours | 59.3 | 31 | 5.8 |
| Rate | $130 | $90 | $40 |
| Total | $7,709.00 | 2,790.00 | $232.00 |

Total $10,731.00

Costs: transcript, typing, copying, phone calls, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 500.00

GRAND TOTAL $11,231.00

Matthew T. Horan and Terry R. Kirkpatrick, Fayetteville, Ark., for plaintiff.

Lynn F. Wade, McAllister & Wade, Fayetteville, Ark., Kathryn A. Lamme, Turner, Granzow & Hollenkamp, Dayton, Ohio, and Jefferson D. Kirby, III, Ford, Harrison, Sullivan, Lowry & Sykes, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I. *Introduction*

Plaintiff, Ruby Leach, instituted this action on June 15, 1981, by way of "Class Action Complaint" on behalf of all present and past employees of Standard Register of Fayetteville, Arkansas, as well as on behalf of all past and present applicants for employment at Standard Register of Fayetteville, Arkansas. Jurisdiction is invoked pursuant to 42 U.S.C. § 2000e–5(b), 28 U.S.C. § 1343(4) and 28 U.S.C. §§ 2201 and 2202.

Since that time, three volumes of pleadings, motions, briefs, exhibits and correspondence have been submitted to the Court. The Court has issued several rulings in an attempt to define the issues and allow the timely disposition of this cause.

Nine months of discovery and preparation were allotted to plaintiff to address and define the class certification issue. On March 23, 1982, a hearing was held on the certification issue and the matter was taken under advisement by the Court pending the submission of briefs by the respective parties. On April 21, 1982, Denise Parson sought leave to intervene, both individually and as a class representative, in this matter. For various reasons, intervention was denied. From the motion of Denise Parson, it appeared that plaintiff Leach had attempted to redefine the class for the fourth or fifth time. The classes remain somewhat vague and ambiguous.

Briefs have been submitted on behalf of both sides. From the voluminous materials submitted, the following facts appear:

The Standard Register Company opened its Fayetteville, Arkansas, plant in 1958. The plant is composed of an office division and a plant division. Plant operations are exclusively involved with the printing and production of business forms.

The Printing Specialities' and Paper Products' Union No. 673 represents bargaining unit employees within the plant division. The office workers are not unionized. Under the current and previous collective bargaining agreements, the plant is divided into ten departments; and these departments now encompass a total of 44 classifications.

Under the terms of the collective bargaining agreement, promotional opportunities are provided within a department as follows: As an opening occurs within a line of progression, it is offered to lower levels of employees. Within the Collating Department, if there is a job opening in Group I, Roll Collator "C", for example, the most senior employee in Group II and Group III would have the opportunity for promotion. Group II and Group III are considered as one for purposes of advancement opportunity.

The collective bargaining agreement also provides that an employee shall have the right at all times to improve his status or job classification by indicating a preference for a transfer from a lower-rated classification to a higher-rated classification. This is done by a transfer card. These transfer requests are maintained in the personnel office and expire one year from the date filed.

Plaintiff Leach, upon first applying for employment with defendant company on March 13, 1978, completed an application form on which she indicated that she was interested in a position either in packing or as quality control inspector. Plaintiff understood, however, that she was applying for any available position, whether permanent or temporary.

On January 12, 1979, plaintiff was hired as a temporary employee and worked as such until she was hired as a permanent employee on June 16, 1980. As a temporary employee, plaintiff either replaced absent or vacationing permanent employees in miscellaneous bindery or performed "rework."

Plaintiff's last period of temporary employment began on June 9, 1980, when she worked in miscellaneous bindery. This work ended on June 15, 1980, the same day that her supervisor, Jack Clark, asked plaintiff if she would like a full-time regular position in the bindery department. Plaintiff accepted the position and, the following day, began the 90-day probationary period.

Mr. Sargeant, plaintiff's supervisor, concluded that plaintiff was an unsatisfactory probationer and decided to terminate her. Mr. Sargeant explained to plaintiff the reasons for her discharge and wrote a memo detailing his "discharge conference" with her the same day.

The day after being discharged, plaintiff wrote to the Chairman of the Board of The Standard Register Company in Dayton, Ohio, complaining of sexual harassment. She accused John Layton, a foreman, and Bob Campbell, her former foreman on second shift, of threatening that she would be fired if she didn't consent to sexual relations with them. Plaintiff filed a charge of sexual harassment with the Equal Employment Opportunity Commission on September 22, 1980. In that charge, plaintiff alleged that:

1. I was discharged because I refused to date the foreman. Julie Finch was also discharged for the same reason.

2. There are other women still there who find they have to date the foreman.

Plaintiff later amended that charge to allege "discrimination against women in the area of jobs and promotions" and (1) that although she was hired as a full-time employee in miscellaneous bindery, she had not been considered for a higher-paying position because of her sex; and (2) that she had been refused jobs in other departments because she was told they were for "men only."

The EEOC held a fact-finding conference in Little Rock on plaintiff's charges on January 28, 1981. The plaintiff did not attend because she did not feel it was necessary to go to Little Rock and because "it was just too inconvenient."

It is on the above-noted EEOC charges that this action is based. Plaintiff filed her class action complaint initiating this action on June 15, 1980.

It must now be determined whether this action, presently set for trial on June 28, 1982, is to be allowed to proceed on behalf of Ruby Leach individually or as a class action on behalf of all others "similarly situated."

Other facts pertinent to the certification issue will be noted where relevant.

## II. Class Actions—Generally

Unquestionably, plaintiffs seeking certification of a class have the burden of establishing that class action treatment is appropriate, with regard to the mandatory requirements of Rule 23. *Smith v. Merchants & Farmers Bank of West Helena*, 574 F.2d 982 (8th Cir. 1978). These requirements are: (1) that the class be so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of those of the class; and (4) that the representative parties will fairly and adequately protect the interest of the class. Rule 23, Fed.R.Civ.P.

Additionally, the Court must find one of the following: (1) that non-certification of the class would create a risk of inconsistent adjudications with respect to individual members, which would establish incompatible standards of conduct for the opposing party; or that non-certification would lead to individual adjudications which are practically dispositive of the other members' claims or which will impair their ability to protect their interests; or (2) that the opposing party has acted or refused to act on grounds generally applicable to the class, making injunctive or declaratory relief to

the whole class appropriate; or (3) questions of law or fact common to the class members predominate over the individual members' questions, and that a class action is superior to other methods for fair and efficient adjudication, considering *inter alia*: (a) the interest of members of the class in having individual control; (b) the extent and nature of related litigation already begun; (c) the desirability of concentrating the litigation in the particular forum; and (d) the likely difficulties encountered in managing the class action.

■ Another factor limiting the availability of class certification is jurisdictional in nature. All claims, whether class or individual, brought pursuant to Title VII (42 U.S.C. § 2000e *et seq.*) which are not included in the plaintiff's EEOC charge or investigated by the Commission must be dismissed for lack of subject matter jurisdiction. *East Texas Motor Freight Systems, Inc. v. Rodriquez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Centenio v. Helena Garment Co.*, 475 F.Supp. 25 (E.D.Ark.1979). Further, it is not appropriate for a Title VII class to include persons whose charges would be time-barred by the 180-day requirement of 42 U.S.C. § 2000e at the time when the plaintiffs filed their charges. *Wright v. Whitehall School Dist.*, 92 F.R.D. 80 (E.D.Ark.1981). Nor may the class include future applicants for employment. *Strong v. Arkansas Blue Cross and Blue Shield, Inc.*, 87 F.R.D. 496 (E.D.Ark. 1980).

■ Naturally a plaintiff may bring a class action on behalf of those similarly situated who have not filed charges with the EEOC. *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968). This tolls the statute for all members of the class. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). But a plaintiff cannot represent those who could not have filed a charge with the EEOC at the time the plaintiff filed her charges.

■ Nevertheless, where continuing violations of Title VII are alleged, Title VII allows the filing of a charge at any time by a present employee. *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979 (D.C. Cir.1973). In such a case, the only employees barred from the class are those who left the employ of the defendant more than 180 days prior to the filing of the EEOC charges. *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239 (3rd Cir. 1975); *Wright v. White Hall, supra*. Conversely, if continuing discriminatory practices are not shown, then all members of the class must complain of an act occurring within the 180-day limitation.

The specific requirements for class certification must now be examined in turn, in order to determine the nature, existence, and extent of the proposed classes, and the propriety of certification.

## III. *Numerosity*

■ An arbitrary numerical limit should not be adopted, but rather, whether joinder is impracticable is the key. *Chmieleski v. City Products Corp.*, 71 F.R.D. 118 (W.D. Mo.1976); *Wright v. White Hall, supra*. Nevertheless, the courts have, in all cases, including Title VII cases, consistently applied stringent requirements to numerosity. *Wright v. White Hall, supra*.

In *Groves v. Insur. Co. of North America*, 433 F.Supp. 877 (D.Pa.1977), class certification was deemed appropriate for a class of 200. In *Swanson v. American Consum. Ind.*, 415 F.2d 1326 (7th Cir. 1969), certification was granted for a class of 150. In *Edmonson v. Simon*, 86 F.R.D. 375 (D.Ill. 1980), a class of 90 was allowed to proceed with its claims. In *Marcera v. Chinlund*, 595 F.2d 1231 (2nd Cir. 1979), a class numbering 43 was certified.

Conversely, in *Carlisle v. LTV Electrosystems*, 54 F.R.D. 237 (D.Tex.1972), a class of 48 was denied certification as too few in number. A class of 34 was adjudged too few in *Crawford v. Western Electric*, 614 F.2d 1300 (11th Cir. 1980). A class of 31 was denied certification in *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980). Fewer than 30 members was held insufficient in *Pruitt v.*

*Commercial Carriers, Inc.*, 395 F.Supp. 1040 (N.D.Ala.1974). Certification was denied in *Mason v. Calgon Corp.*, 63 F.R.D. 98 (W.D. Pa.1974), for a class numbering 23. A class of 13 was held insufficient in *Moore v. Louisville Down, Inc.*, 7 E.P.D. 9151 (W.D. Ky.1973), *aff'd*, 7 E.P.D. 9210 (6th Cir. 1973). Classes of 13 and 11 were held too few in number in *Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304 (8th Cir. 1978).

Plaintiffs note that a class numbering 18 was held sufficient in *AEA v. Board*, 446 F.2d 763 (8th Cir. 1971). In that case, some of the teachers who were potential class members had ceased to teach in the School District. The Court noted that those teachers who remained in the school system had a natural fear or reluctance to bring the action on an individual basis. Further, after the action was filed, a non-discriminatory salary schedule was adopted, thereby reducing the potential members of the class and lessening the chance of individual actions by the black teachers affected.

In the instant case the first class plaintiff attempts to represent is the class of "all women, who, in the past, presently, and in the future have or will apply for positions with the defendant, and who have not been hired or considered for hire in any of the following positions: Forms Packer, Press 'C', Press 'B', Press 'A', Press 'AA', Shipping Clerk, Quality Assurance Operator, Carbon Coater, Hot Spot, Carbon Slitter, Forms Assembler, Material Dispatcher, General Service/Security, Boxline Planner, Forms Repair, Roll Collater [sic] 'C', Roll Collator 'B', Roll Collator 'A'. Given the limitations of *Strong v. Arkansas Blue Cross, supra; McCarther v. Camelot Inn of Little Rock*, 513 F.Supp. 343 (E.D.Ark. 1980); and *Rodriquez, supra*, this class is confined to those claims included in plaintiff's EEOC charge which arose within 180 days of the date of plaintiff's EEOC charge, and may not include future claims.

As plaintiff's EEOC charge was filed September 22, 1980, all claims must have arisen on or after March 28, 1980.

"A threshold requirement is that the class representative possessed the same interest and suffered the same injury as class members ...." *Newton v. Kroger Co.*, 83 F.R.D. 449, 452 (E.D.Ark.1979). Given that plaintiff was herself hired, although allegedly placed into a typical "female" position, she neither possesses the same interest nor has she suffered the same injury as those female applicants who were never hired in any capacity by the defendant.

During the first two quarters of 1981, there were 30 female applicants for operative positions. During this period, three females were hired into "miscellaneous bindery."

During the last three quarters of 1980, there were 35 female applicants for operative positions. Four females were hired in the bindery.

During the last three quarters of 1980, there were 34 female applicants for "any" position, of which four were hired in the bindery.

In the first two quarters of 1981, there were 28 female applicants seeking "any" position, of which three were hired into the bindery.

■ The injury of which plaintiff complains, *i.e.*, discriminatory placement and potential for advancement, is not of the same nature as that of females not employed by defendant in any capacity. This being the case, plaintiff may represent only those female applicants hired by defendant but discriminatorily placed within the various departments and discriminatorily denied equal opportunity for advancement and higher paying jobs. *Jones, supra.*

Under any method of computation it appears that those properly includable in plaintiff's class number only 14. The Court is unaware of any special circumstances, such as those present in *AEA v. Board, supra*, which would satisfy the requirement that joinder of all members be impracticable. Accordingly, the Court finds that certification of this sub-class is not appropriate. *Chmieleski v. City Products, supra.*

■ The second class plaintiff seeks to represent is that of "women discriminatori-

ly denied the initial opportunity of taking the (press) test." For the reasons discussed above, plaintiff may represent only those who were denied the initial opportunity to take the test but who were hired nonetheless. This is so because plaintiff's injury is one of placement or promotion, not rejection for employment. Regardless of the size of the class of all "women discriminatorily denied the initial opportunity of taking the press test," plaintiff cannot represent those who were denied employment, as she was in fact hired, and, indeed, ultimately given the test.

■ A plaintiff, successful in her application for employment, subsequently allowed to take the press test unsuccessfully, simply does not suffer the same injury as an unsuccessful applicant not given the test initially. In this regard, it would seem that plaintiff's complaints are those of placement, advancement, and test validity, rather than discriminatory denial of employment. Consequently, plaintiff is not qualified to represent such a class. Plaintiff may properly represent only those females hired whose initial placement was discriminatorily affected because of the initial unavailability of the press test.

During the second quarter of 1980, one female applicant for "any" position, the plaintiff, was denied the opportunity to take the press test but hired nonetheless.

During the third quarter of 1980, one female applicant for "any" position was employed, but denied the opportunity to take the test.

During the fourth quarter of 1980, two female applicants for "any" position were hired without taking the test.

In the first quarter of 1981, there were ten female applicants for "any" position who were not given the press test. One female was hired.

In the second quarter, two females were hired who were not given the test.

Thus, joinder of these persons is not so impracticable as to justify class treatment. The class would be sufficiently large only if persons were included which plaintiff can-

not properly represent. That plaintiff should not represent those never employed by defendant is made clear by plaintiff's potential conflicts with members of that class. Those females denied employment and denied the opportunity to take the test may well argue that the test is valid but that the defendant's refusal to give it is a violation of Title VII. The plaintiff, however, having failed the test, may perhaps rely upon the asserted invalidity of the test.

Therefore, the class of "all women who were discriminatorily denied the initial opportunity of taking the press test," *which plaintiff may properly represent,* is too few in number to justify certification.

Plaintiff also seeks to represent the class of all women who failed the press test. Although plaintiff is clearly a member of this class, similarly situated to the other members, the press test was given to only 13 females during the applicable period. Only six failed it. Therefore, joinder is not impracticable, and plaintiffs have failed to satisfy the requirement of numerosity.

Finally, plaintiff seeks to represent the class of female applicants whose applications were not seriously considered except for openings "in jobs identified as 'women's work'" and all women denied promotions because of their sex.

The law of this Circuit is clear that a class representative who has been hired is not a proper representative of applicants not hired. *Jones, supra; Tuft, supra.*

Although during the applicable period 102 females (24% of the applicants) applied for jobs, only 14 females were actually employed. It does not appear that joinder of these persons would be impracticable. These are the only persons plaintiff may properly represent in this sub-class.

Plaintiff asserts that females in the Bindery Department have no opportunity for promotion, and that she is a member of that class denied promotion because of her sex. It appears that promotional opportunities are provided within a department as follows:

When an opening occurs within a line of progression, it is offered to lower level employees. Where there is an opening in the Collating Department, in Group I, Roll Collator "C", for example, the senior employees in Group II (Bindery) and Group III (Boxline) are offered the promotion.

Plaintiff testified that she requested a collator position and was denied the position. During the time of her request, the openings were filled by promotion of more senior employees. Further, the Union contract also provides that an employee may improve his job classification by indicating a preference for a transfer from a lower classification to a higher classification by use of a transfer card. Plaintiff testified that she never submitted a transfer card despite her knowledge of this system.

This being the case, plaintiff has failed to demonstrate that she is a member of this sub-class. Thus, only if the system adopted by the employees and the defendant is illegally discriminatory would plaintiff be situated similarly to those in the putative sub-class.

Mr. Newell's affidavit shows that during the applicable time period there were 58 permanent female bargaining unit employees of whom 48 were still employed. Of that 48, 28 have been promoted at least once. Of the remaining 20, 18 were offered promotions.

Thus, it does not readily appear that the *system* adopted by the defendant has had a facially discriminatory impact on the promotions of female workers. In any event, not only is plaintiff not a member of the class of persons entitled to promotions but denied one nonetheless, but also there are not sufficient theoretical members of the class to satisfy the numerosity requirement.

Thus, the Court concludes that, considering the typicality, commonality, and representative ability requirements of Rule 23, there are not sufficient numbers of persons whom plaintiff may properly represent to preclude the practicability of joinder and justify certification.

IV. *Typicality and Commonality*

■ The typicality requirement obligates class representatives to at least demonstrate that there are other members of the class who have similar grievances. *Wright v. Stone Container Corp.*, 524 F.2d 1058 (8th Cir. 1975); *Newton v. Kroger Co.*, 83 F.R.D. 449 (E.D.Ark.1979).

In this Circuit, the typicality requirement is an important one. The class representative must identify other persons who have suffered the same or similar treatment as she allegedly suffered and who have similar grievances. *Wright v. Stone Container Corp., supra; Newton v. Kroger, supra; Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977).

At the certification hearing, the plaintiff was asked to name other females denied the opportunity to take the press test. She was unable to name one. She was asked to name other females who failed the press test. She was unable to name any. She was asked to name other females denied promotion. She was similarly unable to name one. Finally she was asked to point to any female applicant denied a job because of her sex. Plaintiff could not do so.

Plaintiff's amended EEOC charge merely alleged discrimination against women in job placement and promotion. Thus, because plaintiff was in fact hired by defendant, and because plaintiff's EEOC charge did not raise the issue of discriminatory rejection of applicants, plaintiff cannot satisfy the typicality requirement with respect to rejected female applicants. *Centenio v. Helena Garment Co.*, 475 F.Supp. 25 (E.D. Ark.1979); *Wright v. Stone Container Corp., supra.*

The Eighth Circuit has said:
We have specifically held that a single charge of employment discrimination may serve as a basis for a full scale inquiry into the alleged unlawful practice of an employer. [citations omitted]
*Wright v. Stone Container Corp., supra*, at 1062. However, we do not take this to mean that merely because employment discrimination is alleged, the requirements of

*Centenio* are inapplicable. Therefore, plaintiff is precluded from representing rejected applicants because of the jurisdictional considerations noted in *Centenio* and because of the mandatory typicality requirements of Rule 23.

Neither may plaintiff represent the class of rejected applicants denied the initial opportunity of taking the press test. The claims of such persons are not typical of those of the plaintiff. It is clear that the claims of the representative of the class must be, to some degree, coextensive with the class. *Ouellette v. Int'L Paper Co.*, 86 F.R.D. 476 (D.Vt.1980). Accordingly, plaintiff may properly represent only those female applicants actually employed by the defendant but discriminatorily denied the initial opportunity of taking the press test as a means of improper job placement.

Plaintiff may, however, have claims typical of the class of female workers who failed the press test. Plaintiff's claims are undoubtedly such that she has suffered the same injury and presents the same grievance as the other members of this putative class.

The same is not true of plaintiff's alleged fourth class. Plaintiff's claims are not coextensive with those of other female workers entitled to promotion but never offered promotion and never actually promoted. Plaintiff was not entitled to the promotion sought.

Naturally, whether these theoretical classes exist in fact and in sufficient number to justify certification is the more dispositive issue.

With the putative classes thusly narrowed, it is apparent that the commonality requirement for plaintiff's first three classes is met. A single question of law or fact is sufficient to satisfy the rule. *Simon v. Westinghouse*, 73 F.R.D. 480 (D.Pa.1977). It is important to note that the common questions of law or fact need not predominate over the individual questions unless the certification is sought pursuant to Rule 23(b)(3). There is no such requirement for those certified under Rule 23(b)(1) or (b)(2).

Thus, the Court is unable to say that plaintiff has failed to satisfactorily demonstrate the existence of typicality and commonality with the three classes thusly narrowed. Although plaintiff is personally unaware of other persons similarly situated, she has presented other materials from which the Court may properly determine the existence and approximate number of such persons. The impediment to certification in the instant action is that when the requirements of Rule 23 are applied to the facts, there are not a sufficient number of persons similarly situated to justify certification.

### V. *Adequacy of Representation*

This requirement consists of the elements that (1) plaintiff's counsel be qualified, experienced, and generally able to conduct the litigation, (2) there be no evidence of collusion or conflicting interests between the representative and the class, and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision-making as to the conduct of the litigation. *Morgan v. Laborers*, 81 F.R.D. 669 (D.Cal.1979).

As noted, plaintiff is unaware of any female applicant denied employment because of her sex; plaintiff does not know of any female denied the opportunity to take the press test; plaintiff is unaware of any female who failed the press test; and plaintiff cannot name any female denied a promotion because of her sex.

Further, a plaintiff's character is a valid consideration in determining adequacy of representation. *Greene v. Brown*, 451 F.Supp. 1266 (E.D.Va.1978); *Weisman v. Darneille*, 78 F.R.D. 669 (S.D.N.Y.1978). Defendant contends that inasmuch as plaintiff has admitted falsifying her employment application, and has admitted making false charges of sexual harassment against two foremen in a letter to the Chairman of the Board of Standard Register, that plaintiff is not a suitable class representative.

█ More significantly, plaintiff chose not to attend the fact-finding conference of the EEOC with regard to her charges. This

is significant because the Court has the responsibility of insuring that the interests of absent class members be protected.

Moreover, the plaintiff has not joined the Union as a party to this action. Defendant urges that in light of the contractual nature of the transfer and promotion procedures, this raises "grave doubts" as to plaintiff's adequacy of a class representative because of the possibility of the Court's inability to accord the full scope of relief due absent members.

The issue has been raised that the evidence reflects that plaintiff has insufficient financial ability to support the expenses and costs of class-oriented litigation. *See Wright v. Whitehall, supra; Strong v. Arkansas Blue Cross, supra.* Nevertheless, plaintiff has entered a "swapping" agreement with her counsel so as to be properly able to fund the litigation. The Court has serious doubts as to plaintiff's ability to adequately represent the putative classes, but will not lightly deny certification because of plaintiff's weak financial standing. The oppressed victims of systematic discrimination are more often than not thereby affected substantially in their financial resources, and the Court in such cases should encourage alternate methods of procuring legal counsel who can and will adequately protect the interests of the absent class members.

Inasmuch as the Court has decided that plaintiff's putative classes, as limited because of the requirements of typicality and commonality, are too small in number of class members to justify certification, we need not reach the issue of plaintiff's inherent inability to represent the class.

### VI. *Conclusion*

"The class action was an invention of equity ... mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs." *Montgomery Ward & Co. v. Langer,* 168 F.2d 182 (8th Cir. 1948).

The original class action rule was adopted in 1938 and underwent substantial revision in 1966. In the forty-four years in which class actions have been recognized by rule, the concept has undergone considerable refinement and definition with due regard to the pressing social issues of our times. It has become the foremost tool with which to fight wide-scale deprivation of our basic constitutional freedoms and reprehensible and disparate treatment based solely on gender or race. The importance and significance of the class action cannot be overstated, and every member of society has benefitted from its use.

Nonetheless, the class action is not, nor was it intended to be, all things to all persons. Like the Constitution itself, the class action does not provide a vehicle for the elimination of all things that are "evil," nor does it provide a vehicle to command all things that are "good." The wisdom of those who deliberated, composed, drafted, refined and delineated the scope and applicability of the class action is not properly open to question in this Court.

The simple truth is that the creators created the present prerequisites to class action proceedings, and they saw that they were good. The requirements are mandatory, cannot be waived, and often operate as harshly as they do benevolently.

After several "redefinitions," Ruby Leach comes to this Court seeking to represent others, allegedly treated unfairly, seeking redress. Ruby Leach may well be the oppressed victim of purposeful, systematic, unjust and invidious discrimination. That has not yet been presented to the Court. Numerous others may, as well, be such victims. However, after applying the mandatory requirements of Rule 23 in an attempt to determine those others for whom she may speak, it appears that there is no sufficient reason why those others may not speak for themselves. There are simply too few to say that joinder of those persons and their claims is impracticable. Put another way, if the requirement of numerosity is to be satisfied, then the requirements of typicality and commonality are not. If typicali-

ty and commonality are present, then numerosity is not. The classes are too small on the one hand, and too diverse on the other.

This being the case, it will be the order of the Court that the motion of plaintiff, Ruby Leach, for class certification, is denied. She will not be allowed to attempt to right the alleged wrongs done others. Ms. Leach will proceed to trial individually, and in her own behalf.